Commonwealth *v.* Ponds, Appellant.

Argued March 20, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Douglas Riblet*, Assistant Defender, with him *John W. Packel*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*Deborah E. Glass*, Assistant District Attorney, with her *Mark Sendrow* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 22, 1975:

This appeal arises from appellant's conviction of possession of a sawed-off shotgun in violation of Section 908[1] of the Crimes Code .

At approximately 6:00 P.M. on April 6, 1974, a Philadelphia police officer, in response to a radio call, came upon appellant standing near the steps of a house holding a sawed-off shotgun. Appellant attempted to dispose of the shotgun, but it was retrieved by the police officer. Appellant was arrested and a live round of shot-gun ammunition was found in his coat pocket. At trial appellant testified that he had seen the shotgun, but denied both having possession of it and attempting to dispose of it.

Appellant now argues that the sawed-off shotgun was not a prohibited offensive weapon as defined by Section 908 because it was inoperable.[2] Therefore, the question we must now decide is whether the legislature intended an operability requirement to be included in Section 908 of the Crimes Code. The relevant parts of Section 908 are as follows:

> "(a) Offense defined.—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon. . . .

---

1. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §908.

2. At trial the Commonwealth stipulated that the sawed-off shotgun was inoperable in that it had a defective trigger mechanism and that it was missing numerous functional and non-functional parts.

"(c) Definition.—As used in this section 'offensive weapon' means any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose."

As can be seen, the statute itself does not answer the question.

Appellant argues that the case of *Commonwealth v. Layton*, 452 Pa. 495 (1973) compels the conclusion that a sawed-off shotgun must be operable in order to violate Section 908. *Layton* involved the determination of whether a person in possession of an inoperable firearm may have been convicted under Section (d) of the Uniform Firearms Act which provided: "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm or have one in his possession or under his control."[3] The court in *Layton* reached the following conclusion: "The Act, however, was obviously intended to cover only objects which could cause violence by firing a shot. An object, therefore, which is incapable of firing cannot be a cause of violence within the intention of Section (d) of the Act. In this case, the parties agree that the object was not capable of firing—inoperable. The appellant did not therefore violate Section (d) of the Act." 452 Pa. at 498. While we feel that *Layton* correctly resolved the operability problem under the Uniform Firearms Act, after consideration of the above mentioned, and other, statutes and the purposes behind such statutes, we feel that the operability rule in *Layton* should not be ap-

---

3. Act of June 24, 1939, P.L. 872, §628 (d), as amended, 18 P.S. 4628 (d). Now Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §6105.

plied to Section 908. The use of different standards of operability for different legislation is not unreasonable in light of the different purposes behind the legislation. A similar result was reached by the New York courts in the case of *People v. DeWitt*, 285 App. Div. 1157, 140 N.Y.S.2d 190 (1955), where it was held that although an inoperable pistol was not a firearm under the New York firearm statute, possession of such inoperable pistol could nevertheless be prohibited by a dangerous weapon statute.[4]

The section of the Uniform Firearms Act considered in *Layton* is very limited in scope in that it relates to a person who has been convicted of a crime of violence and "intended to cover only objects which could cause violence by firing a shot." *Commonwealth v. Layton*, supra. Thus, operability of a firearm was a requirement under that section. However, the purpose behind Section 908 is much broader. The weapons dealt with in Section 908 have no peaceful purpose, and their only conceivable use is for purposes which our society has found to be criminal. By enacting Section 908 the legislature has clearly stated that an "implement for the infliction of serious bodily injury which serves no common lawful purpose"[5] shall not be allowed to exist in our society.

The broad purpose behind Section 908 can be seen in the general class of weapons which it prohibits, i.e., offensive weapons. Offensive has been defined as objectionable, disagreeable and obnoxious.[6] Can a sawed-off shotgun be said to be any less objectional, disagreeable or obnoxious because it is inoperable? Section 908 reflects a strong public policy to dissuade persons from carrying and brandishing weapons or any "objects" which have

---

4. See also *People v. Simmons*, 124 Misc. 28, 207 N.Y.S. 56 (1924).

5. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §908.

6. See 67 C.J.S. Offensive at pp. 88-89; Black's Law Dictionary 1233 (4th ed. 1951).

the appearance or characteristics of an offensive weapon. Much sorry experience has taught members of our society to be inclined to accept such objects for what they appear to be. To establish a violation of the statute prohibiting the carrying of a sawed-off shotgun, it is sufficient to show that the weapon possessed the outward appearance and characteristics of a sawed-off shotgun.

The strength of this legislative prohibition is demonstrated by the fact that one can be convicted of violation of Section 908 for mere possession of the prohibited items even if there is no intent to employ such items criminally.[7] Section 907[8] of the Crimes Code demonstrates this point. Under Section 907 it is unlawful for one to possess an instrument of crime or a firearm or other weapon concealed upon his person "with intent to employ it criminally."[9] There is no such requirement under Section 908. This clearly indicates that the legislature intended to prohibit the items enumerated in Section 908 from being in free circulation in the community.

Further comparison of Sections 907 and 908 shows legislative intent which goes directly to the specific question involved in this case. Section 907 defines "weapon" as follows: "Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon."

Thus, for a weapon to come under the prohibition of Section 907 it must be operable, i.e., "readily capable of lethal use." There is no such requirement spelled out in Section 908, and we therefore conclude that the legis-

---

7. See American Law Institute, Model Penal Code, Reprint of Tentative Drafts Nos. 11-13 at p. 68 (1960).

8. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §907.

9. *Id.*

lature did not intend to impose the operability requirement to Section 908, which it imposed in the preceding section. The legislature in Section 908 was not interested in the operability of a sawed-off shotgun, but merely in its possession. The fact that a sawed-off shotgun is at a given time inoperable does not discount the danger which the legislature intended to prevent. The mere possession of an item identifiable as a sawed-off shotgun, even though inoperable, is still an ominous presence, and has no place nor possible use in the community and should be prohibited.

For the above reasons we hold that the offensive weapons prohibited by Section 908 are prohibited whether they are operable or inoperable.[10]

Accordingly the decision of the lower court is affirmed.

---

10. The conclusion reached in the instant case is in accord with the recent decision of the California Court of Appeals in the case of *People v. Favalora*, 42 Cal. App. 3d 988, 117 Cal. Rptr. 291 (1974).

---

DISSENTING OPINION BY HOFFMAN, J.:

The sole issue in the instant case is whether an inoperable sawed-off shotgun is an offensive weapon under §908 of the Crimes Code.[1]

Section 908 of the Crimes Code provides: "(a) ... A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells or otherwise deals in, uses, or possesses any offensive weapon. ...

"(c) ... As used in this section 'offensive weapon' means any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment of silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instru-

---

1. Act of Dec. 6, 1972, P.L. 1482, §1.

ment, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or *other implement for the infliction of serious bodily injury which serves no common lawful purpose.*" (Emphasis added). The resolution of this issue turns on whether the language of §908, specifically, whether "any . . . other implement for the infliction of serious bodily injury which serves no common lawful purpose," includes inoperable weapons.

In *Commonwealth v. Layton*, 452 Pa. 495, 307 A.2d 843 (1973), the Supreme Court held that Section (d) of the Uniform Firearms Act,[2] required that a reasonable fact-finder must be able to infer that a pistol was operable[3] in order to hold a defendant criminally liable. The Act stated that "[n]o person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or even have one in his possession or under his control. . . ." The Court looked to the *"mischief to be remedied* and *the object to be attained"* to determine the intent of the General Assembly: "Any object —a brick, a bat or a knife—can be a cause of violence. The Act, however, was obviously intended to cover only objects which could cause violence by firing a shot. An object, therefore, which is incapable of firing cannot be a cause of violence within the intention of Section (d) of the Act." 452 Pa. at 498, 307 A.2d at 844.

Similarly, it appears that the "mischief to be remedied" by §908 was the harm caused by those in possession of offensive weapons. Section 908 points to specific instruments—bombs, grenades, etc.—all of which share one characteristic, the capability of inflicting

---

2. Act of June 24, 1939, P.L. 872, §628(d), as amended, 18 P.S. 4628(d) (now 18 Pa. C.S. §6105).

3. Here, as in *Layton*, the Commonwealth stipulated that the weapon was inoperable.

serious bodily injury.[4] Thus, the relevant *harm* pro-scribed is *the use of such weapons to cause serious bodily injury*. Arguably, one can commit an assault or a robbery with an inoperable weapon with the same results as if the weapon were operable. The Court in *Layton,* however, was faced with the same problem: a person who had committed a previous crime of violence could commit a subsequent crime of violence with an inoperable weapon. Nonetheless, the Court concluded that "[a]n object ... which is incapable of firing cannot be a cause of violence ...." 452 Pa. at 498, 307 A.2d at 844. Thus, I read §908 to mean (1) that the weapon must be capable of causing serious bodily harm and (2) that the *manner* in which the weapon can cause the harm is that for which the weapon was designed.

In support of its reading of §908, the Majority con-trasts §908 with §907: "The strength of this legislative prohibition is demonstrated by the fact that *one can be convicted of violation of Section 908 for mere possession of the prohibited items even if there is no intent to employ such items criminally*. . . . Under Section 907 it is unlawful for one to possess an instrument of crime or a firearm or other weapon concealed upon his person 'with intent to employ it criminally.' There is no such requirement under Section 908. This clearly indicates that the legislature in-tended to prohibit the items enumerated in Section 908 from being in free circulation in the community." (Em-phasis added). The Majority can so conclude only by ig-noring §908(b): "It is a defense under this section for

---

4. The Majority states that "[t]he broad purpose behind Section 908 can be seen in the general class of weapons which it prohibits, i.e., offensive weapons." My disagreement is that the class of weapons prohibited all can cause "serious bodily injury," as specifically stated in the statute. The Majority relies on Black's Law Dictionary to define "offensive" ("objectionable, disagreeable and obnoxious") rather than the explicit language of the statute to define the general class of prohibited weapons.

the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, or that he possessed it briefly in consequence of having found it or taken it from an aggressor, or *under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully.*"[5] (Emphasis added).

Under §907, a person must have an intent to employ a weapon *criminally;* under §908, that person must have an intent to use the weapon *unlawfully*—a frail basis on which to find a legal distinction.

Thus, I disagree with the Majority's statement that "[t]he mere possession of an item identifiable as a sawed-off shotgun, even though inoperable is still an ominous presence, and has no place or possible use in the community...." I believe that the statute is explicit: the offender must possess the weapon with an intent to use it unlawfully and that the weapon is one that can cause serious bodily injury. Mere possession of an inoperable sawed-off shotgun should not be sufficient to sustain a conviction.

Therefore, the judgment of sentence should be reversed.

---

5. The issue is not raised, and therefore, we do not consider the constitutionality of requiring the defendant to prove that his intent was lawful. But see, *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974).