### Tasers

KANE, *Attorney General,* May 24, 1976—By your memorandum of May 14, 1976, you have requested an opinion as to the use, sale, manufacture and possession within this Commonwealth of the device known as the Taser. The Taser, manufactured by a California firm, Taser Systems, Inc., is

composed of a plastic launcher approximately nine inches in overall length, a flashlight and two cartridges which can be fired rapidly. Each cartridge contains two dart-type projectiles, tipped with small barbs, attached to wires at the side of each projectile. Behind the projectiles are explosive charges which are activated when the trigger is pressed. Upon deployment on the target area, a pulsed low-amperage current of 50,000 volts is carried to the darts by the insulated wires. The recipient is immobilized by the current.

The Crimes Code of December 6, 1972, P.L. 1068, makes it a misdemeanor of the first degree to repair, sell or otherwise deal in, use or possess any offensive weapon: 18 Pa.C.S. §908(a). The term "offensive weapon" is defined at section 908(c) as follows:

". . . any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose."

The Taser, a weapon which has only recently been marketed widely, is not specifically listed in section 908(c). The issue here, then, is whether the Taser is an "implement for the infliction of serious bodily injury which serves no common lawful purpose."

Clearly, the Taser is capable of, and intended for, the infliction of serious bodily injury. When the weapon is activated and electrical current transmitted to a person of normal health, the nervous

system is disrupted and the individual is left totally incapacitated for approximately 15 minutes or a longer period of time. Moreover, it is not unlikely that death or permanent, serious injury could be the result when the Taser is used against someone of less than average health and physical well-being. Thus, the first element of the definition of an offensive weapon in section 908(c) is met here.

Even though section 908 is based on sections of the former Penal Code,* the second element of the definition of an offensive weapon, the phrase "serves no common lawful purpose," is derived from section 5.07 of the Model Penal Code of American Law Institute, reprint of tentative drafts nos. 11-13, at p. 68 (1960), and has only recently been construed by Pennsylvania courts. In Commonwealth v. Gatto, 236 Pa. Superior Ct. 92, 344 A. 2d 566 (1975), appellant had been convicted under section 908 for possession of a knife with a blade 30 inches long. Inasmuch as the blade was not "'exposed in an automatic way by switch, push-button, spring mechanism, or otherwise . . .'", the conviction could not stand unless the knife could be termed an "implement for the infliction of serious bodily injury which serves no common lawful purpose." Because it was obviously capable of causing severe harm, the issue before the court was whether the knife had no common lawful purpose. As Judge Cercone observed for the unanimous Superior Court, the phrase "common lawful purpose" could be interpreted several ways:

"(1) it could be so strictly construed that no item would be prohibited by the phrase for, if one looks long enough, a common lawful purpose could be found for everything, metal knuckles, for instance,

*18 P.S. §§4416, 4417, 4419, 4629.

could be used to crack walnuts; (2) it could be so loosely construed that all items would be prohibited by the phrase; or (3) it could be given a reasonable common sense interpretation.": Commonwealth v. Gatto, supra, 236 Pa. Superior Ct. at 97, 344 A. 2d at 568.

Selecting the third alternative, the court concluded that the 30-inch knife was indeed a prohibited offensive weapon, and the judgment of sentence was affirmed.

In another opinion, the Superior Court has stated that section 908 deals with weapons having no peaceful purpose, whose only conceivable use is for purposes which our society has found to be criminal: Commonwealth v. Ponds, 236 Pa. Superior Ct. 107, 345 A. 2d 253 (1975) (inoperable sawed off shotgun a prohibited offensive weapon). Both Ponds and Gatto emphasize that each case under section 908 must turn on its particular facts since it is impossible to fashion a per se rule based on the term "common lawful purpose." See also Commonwealth v. Barton, 88 York 122 (C.P. Pa. 1974) (knife with four-inch blade not a prohibited offensive weapon).

The Taser, like a 30-inch knife, metal knuckles, and a sawed off shotgun, and unlike a butter knife, scissors, or a pack of razor blades, is capable of inflicting serious bodily injury *and* serves no common lawful purpose. Applying the reasoning of the Superior Court in Gatto and Ponds, we conclude, and you are so advised, that the Taser is a prohibited offensive weapon under section 908 of the Crimes Code.

I note, in so advising you, that the Legislature may well, and should in my opinion, address the

problem of the Taser in the near future, by specifically including a weapon such as a Taser under the definition of prohibited offensive weapon or by otherwise stating public policy with respect to such weapons in Pennsylvania.