448 A.2d 594

**COMMONWEALTH of Pennsylvania**

**v.**

**Edward J. DEVLIN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1981.

Filed July 23, 1982.

Petition for Allowance Oct. 19, 1982.

Larry A. Kalikow, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before BROSKY, BECK and McEWEN, JJ.

BROSKY, Judge:

Appellant was charged with possession of prohibited offensive weapons, and cruelty to animals. Following denial of his motion to suppress, a jury trial was held. Appellant was found guilty of possession of a prohibited offensive weapon, namely, a pipe bomb. Post-verdict motions were subsequently filed and denied, and appellant was sentenced to three years probation. This appeal followed.

The central issue for our determination is whether the evidence presented established a violation of 18 Pa.C.S. § 908. The court below found that the evidence was sufficient. We agree.

Appellant's central contention on appeal is that the evidence was insufficient to sustain a verdict of guilty under 18 Pa.C.S. § 908 on the ground that appellant was not shown to possess an "offensive weapon" within the meaning of the statute. In this regard, he further argues that his motion to suppress evidence should not have been denied. Finally, appellant contends that his trial counsel was ineffective for failing to preserve for review certain objections to the judge's charge to the jury.

The facts are as follows. On August 26, 1979, Jacob Franklin, Code Enforcement Officer, received a call from a friend, Mrs. Roberta Wagner, to the effect that her dog had been shot. Mrs. Wagner lived in a three-story apartment building at 2109 Herr Street. Shortly after Mr. Franklin arrived at Mrs. Wagner's apartment building, the police

arrived. Mrs. Wagner testified at the suppression hearing that the police stated to her that they wanted to go inside the apartment building to look for spent shells in connection with the shooting. She stated that she gave the police officers her permission, as a tenant, to enter the basement. Thereafter, Jacob Franklin and Officer Ralph Franklin, patrolman, entered the basement, looked around, then exited. Officer Franklin testified that when they returned to the outside, the landlord of the building, Mr. Vergot, came over to ask what was going on. Franklin explained about the shooting, and requested permission to reenter the building, which Mr. Vergot granted. Officer Franklin, Mr. Vergot, and another officer then returned to the basement. Inside a part of the basement was a workbench, which Mr. Vergot explained had been placed there by his nephew, who was a tenant. Mr. Vergot, a plumber, stated that appellant worked for him in his plumbing business, and that plumbing supplies were stored near the work bench. On or near the workbench, the police officers noticed an assortment of military weapons and other items, including more than 600 rounds of ammunition; 25 live grenades; smoke and tear gas; 2 quarter-pound blocks of TNT; cans of smokeless powder; and an 18-inch length of pipe with a recoupler reduced by taping to receive a grenade fuse which had been screwed into it. Near the bench was a locker containing military uniforms bearing the name "Devlin." Mr. Vergot indicated that appellant was a Marine Corps reservist. Appellant was subsequently charged with possession of a prohibited offensive weapon.

Under 18 Pa.C.S. § 908, a person commits a misdemeanor of the first degree if, except as authorized by law, he . . . "possess any offensive weapon." Subsection (c) states:

> As used in this section "offensive weapon" means any bomb . . . or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

Appellant contends that the pipe and attached apparatus did not constitute a completed, functional "pipe bomb." In so arguing, appellant would have us overrule our decision in *Commonwealth v. Ponds*, 236 Pa.Super. 107, 345 A.2d 253

(1976). *Ponds* concerned a conviction under 18 Pa.C.S. § 908 for possession of a sawed-off shotgun. Appellant argued that it was not a prohibited offensive weapon because it was inoperable (it had a defective trigger mechanism and was missing certain parts). In holding that the legislature did not intend to include an operability requirement, we stated that it was "[s]ufficient to show that the weapon possessed the outward appearance and characteristics of a sawed-off shotgun." Id., 236 Pa.Superior at 112, 345 A.2d at 256.

The opinion goes on to state:

The fact that a sawed-off shotgun is at a given time inoperable does not discount the danger which the legislature intended to prevent. The mere possession of an item identifiable as a sawed-off shotgun, even though inoperable is still an ominous presence and has no place nor possible use in the community and should be prohibited.

Id., 236 Pa.Superior at 113, 345 A.2d at 256.

Therefore, under *Ponds*, the weapon does not have to be operable. In the case at bar, the record shows that the pipe and attached apparatus was identifiable as a pipe bomb. At trial, Larry McCune, special enforcement officer with the Bureau of Alcohol, Tobacco and Firearms, and an expert in explosives, was asked whether the pipe and attached apparatus could have been assembled into a device of any kind.

A: Yes, very easily.

Q: [H]ow would that be accomplished?

A: Well, you'd have to have an amount of powder from the can and dump it down the end and seal the end ...

Q: And when constructed in the manner that you described, what would a device of that type that you described be called?

A: *An explosive bomb. We call it a pipe bomb.* (emphasis added)

Q: How would it function?

A: It would function when you pull the safety pin from the end release, we have a response relating after four or five seconds.

Q: What is the response?

A: The response from the grenade fuse. There would be a four or five second delay. Then we would have initiation, the initiation on the fuse which initiates the powder inside the pipe.

. . . . .

Q: After you had initiated in the manner you described, what would be the end result once the powder was inside the pipe initiated?

A: It would cause the pipe to burst and give an explosion which would propel metal fragments at a high velocity. . . .

According to McCune's testimony, therefore, the pipe and attached apparatus was identifiable as a "pipe bomb," and function once the powder was poured into the end and the end sealed. Once the powder was inside and the pipe initiated, the pipe would burst, causing an explosion.

We hold that the pipe and attached apparatus constituted "an item identifiable as a pipe bomb," which, even though not operable until powder was poured into the end and the end sealed, was nonetheless "an ominous presence" which "has no place nor possible use in the community." *Commonwealth v. Ponds*, supra. Even if the parts separately could conceivably have some lawful use, they were in this instance, connected, and as such, had no possible use in the community. As we noted in *Ponds*, the class of weapons covered by 18 Pa.C.S. § 908 "have no peaceful purpose, and their only conceivable use is for purposes which our society has found to be criminal." Id., 236 Pa.Super. at 111, 345 A.2d at 255; *Commonwealth v. Fisher*, 485 Pa. 8, 400 A.2d 1284 (1979). There can be no doubt here that the only "conceivable use" for a pipe bomb is "for purposes which our society has found to be criminal." Accordingly, we hold that the evidence was sufficient here to sustain a verdict of guilty under 18 Pa.C.S. § 908.

Appellant also argues that the court below erred in denying his motion to suppress. He contends that the evidence should have been suppressed because it was obtained pursuant to an unlawful search. Appellant asserts that he had a

legitimate expectation of privacy with respect to the basement workbench area in which the weapon in question was found.

■ Mrs. Wagner, the tenant whose dog had been shot, testified that all the tenants had access to the basement in order to store whatever belongings they might have. The workbench area was part of the total basement area allocated to the tenants for storage. Given these facts, it cannot be said that appellant had a legitimate expectation of privacy in the basement area. In addition, consent was given to the police, by Mrs. Wagner and by Mr. Vergot, the landlord, to enter the basement. Since the basement was within the common use and control of both Mrs. Wagner and Mr. Vergot, both could validly consent the police's search of the basement area, and a warrant was not required. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Commonwealth v. Glover*, 266 Pa.Super. 531, 405 A.2d 945 (1979).

Accordingly, we find that appellant's argument lacks merit.

■ Appellant's final argument is that trial counsel was ineffective for failing to raise or preserve for review objections to the court's charge to the jury. Appellant contends that counsel should have objected to a portion of the charge which defined "offensive weapon" as "includ(ing) the components of an offensive weapon..."

The record shows that the trial judge's charge to the jury included the following statements:

\* \* \* \* \* \*

What is an offensive weapon? It has been defined in our Crimes Code and would include a bomb, or any other implement for the infliction of serious bodily injury which serves no common useful purpose... As I understand the Commonwealth does not contend that the pipe as it appeared in this courtroom could be fragmented through an explosive charge then contained in it; but rather that the presence of the components within the possession of this defendant are such to readily be assembled in a form that

would explode.... If the weapon was inoperable at the time because it was not loaded or lacked some component to make it immediately operable it includes possession of components if they can readily be assembled into the weapon provided that the components are possessed by the defendant at that time for that purpose. So, that you must find so far as the bomb is concerned that it could readily have been assembled from the components found in the defendant's possession, and that he, in fact, possessed it for that purpose, to assemble a bomb.

We hold that the above reference to "components," viewed within the context of the total charge, compact with the language and reasoning contained in *Commonwealth v. Ponds*, supra, and were not objectionable. The evidence clearly established that the pipe and attached apparatus could "readily be assembled into [a pipe bomb]." Therefore, the charge was proper and trial counsel was not ineffective for not taking specific objection to use of the term "components." Accordingly, we hold that this claim is also without merit.

For these reasons, we affirm the judgment of sentence entered by the court below.

Judgment of sentence affirmed.