495 A.2d 584

**COMMONWEALTH of Pennsylvania**

v.

**Edward E. STEWART, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 31, 1984.

Filed June 28, 1985.

518

Peter T. Campana, Williamsport, for appellant.

Kevin H. Way, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before MONTEMURO, BECK and HESTER, JJ.

MONTEMURO, Judge:

This is an appeal from a judgment of sentence of the Court of Common Pleas of Lycoming County. Appellant, Edward E. Stewart, presents the following issues for our review: whether the trial court erred (1) in granting the Commonwealth's motion to extend the time for trial since he was not brought to trial timely pursuant to Pa.R.Crim.P. 1100; (2) in denying his motion to suppress physical evidence; (3) in not granting his motion for mistrial based on the introduction of prior unrelated criminal activity at trial; (4) in refusing appellant's requested point for charge; and (5) in denying appellant's motion in arrest of judgment alleging a conflict between 18 Pa.C.S. §§ 908, 6102, and 6106. We find these allegations to be without merit, and affirm the judgment of sentence.

On April 20, 1982, a criminal complaint was filed against appellant charging him with violating the prohibited offensive weapons statute,[1] receiving stolen property,[2] owning a

1. 18 Pa.C.S.A. § 908.
2. *Id.* at § 3925.

firearm as a former convict,[3] and altering or obliterating marks of identification.[4] Following a trial by jury, appellant was found guilty of possessing a prohibited offensive weapon. Post-verdict motions were denied and on May 6, 1983, appellant was sentenced to a term of imprisonment for a period of not less than fifteen (15) months nor more than four (4) years, and to pay the costs of prosecution. This appeal followed.

Appellant first contends that he was not brought to trial timely pursuant to Pa.R.Crim.P. 1100. Specifically, he argues that the Commonwealth did not produce sufficient evidence at the extension hearing to show due diligence warranting an extension of time for the commencement of trial.

Appellant's case was scheduled for trial the week of October 11, 1982, to October 15, 1982. Upon agreement of counsel and appellant, the deadline was extended to November 19, 1982. The prosecution then filed a motion for an extension of time for commencement of trial pursuant to rule 1100(c). In its motion, the Commonwealth stated that a key and essential Commonwealth witness was scheduled to undergo a kidney operation on November 16, 1982 at the Williamsport Hospital and, thus, he would not be available for trial in November of 1982. Following a rule 1100 hearing, the Commonwealth was granted an extension of time for trial until December 10, 1982. Appellant then requested a continuance and waived rule 1100 until January 14, 1983. Appellant's trial was held January 11, 1983 through January 13, 1983.

The Commonwealth must exercise due diligence in attempting to bring a defendant to trial within the period prescribed by rule 1100. *Commonwealth v. Bradford,* 339 Pa.Super. 215, 488 A.2d 628 (1985). The burden is on the Commonwealth to prove by a preponderance of the evidence, that it has met the requirements of rule 1100(c).

3. *Id.* at § 6105.
4. *Id.* at § 6117.

*Commonwealth v. Bolden,* 336 Pa.Super. 243, 485 A.2d 785 (1984). In reviewing the ruling of a hearing court that the Commonwealth has met this burden, we consider only the evidence presented by the Commonwealth and so much evidence as, fairly read in the context of the record, remains uncontradicted. *Commonwealth v. Dancy,* 317 Pa.Super. 578, 464 A.2d 473 (1983). This court has held that "[w]hen despite the exercise of due diligence, the Commonwealth cannot bring a defendant to trial within the prescribed period, a court may properly grant an extension." *Commonwealth v. Bradford, supra.* The test applied in these cases to determine whether the Commonwealth acted with due diligence is one of reasonableness under the circumstances. *Commonwealth v. Williams,* 317 Pa.Super. 456, 464 A.2d 411 (1983).

■ After an independent review of the evidence presented at the extension hearing in the case *sub judice,* we find that the Commonwealth presented sufficient evidence at the hearing to support the trial court's finding that the Commonwealth acted reasonably and with due diligence in attempting to bring appellant to trial. At the hearing, Dr. Paul Leber, the witness' physician, testified that the witness was in the hospital and that a few days prior to the hearing surgery on the witness' kidney was performed.

■ Regarding the unavailability of a witness, we have previously noted, " '[w]hen witnesses become unavailable toward the end of the Rule 1100 time period—whether through vacation, *illness,* or other reasons not within the Commonwealth's control—the Commonwealth is prevented from commencing trial within the requisite period despite its due diligence and an extension of time is warranted.' " *Commonwealth v. Williams, supra,* 317 Pa.Superior Ct. at 470, 464 A.2d at 418 (*quoting Commonwealth v. Sinor,* 264 Pa.Super. 178, 183 n. 5, 399 A.2d 724, 727–28 n. 5 (1979)) (emphasis added). In the instant case, the Commonwealth's witness was scheduled to undergo a kidney operation during the week appellant's case was scheduled for trial. The Commonwealth acted reasonably and with due diligence;

however, the witness' illness and hospitalization prevented him from testifying. Thus, the unavailability of the witness occurred despite the Commonwealth's due diligence. An extension may be granted in circumstances where a witness has been hospitalized, since that situation is beyond the Commonwealth's control. *Commonwealth v. Reihart*, 302 Pa.Super. 515, 449 A.2d 35 (1982).

Appellant also contends that the unavailable witness was not an essential witness because some of his testimony was cumulative to the evidence provided by two (2) other witnesses at trial. We find this argument without merit.

■ Once the Commonwealth produces testimony that the witness is unavailable it need only provide reasons why the witness is important to its case. *Commonwealth v. Schuster*, 288 Pa.Super. 310, 431 A.2d 1063 (1981). In *Schuster*, this court stated:

[U]nless the unavailable witness is one whose testimony is clearly unnecessary or patently cumulative the determination of whether the witness is important to the Commonwealth's case should be left to the exercise of prosecutorial discretion.

This standard provides due recognition to the prosecution's responsibility in determining which witnesses are important to most effectively present the Commonwealth's case while insuring that the defendant's right to a speedy trial is not thwarted by claims of unavailability of unnecessary witnesses. Moreover, we do not believe that an extension or dismissal hearing should evolve into an evidentiary hearing on the admissibility of the evidence which the Commonwealth intends to introduce at trial.

*Id.*, 288 Pa.Superior Ct. at 318, 431 A.2d at 1067.

In the instant case, at the rule 1100 hearing, the Commonwealth testified that the witness was essential because he could testify as to appellant's possession of the sawed-off shotgun and the alteration of the identification marks on a revolver. The trial court in its findings of fact found,

1) That the Commonwealth has established by a preponderance of the evidence the following:

a) Mr. Walter Moorehouse is a key and essential witness in the Commonwealth's case.

b) The testimony of Mr. Walter Moorehouse is crucial to the Commonwealth's case.

c) Mr. Walter Moorehouse is not available for trial on November 18th or 19th because of a recent kidney operation.

d) The Commonwealth has used due diligence in the preparation of this case but is unable to proceed because of the absence of the key witness, Mr. Walter Moorehouse.

e) The testimony of Mr. Walter Moorehouse is not cumulative.

Trial Court Order, November 18, 1982, at 1–2. Thus, the Commonwealth provided sufficient reasons why the witness' testimony was essential to its case.

We conclude that the Commonwealth acted with due diligence considering the factual situation presented and that appellant's right to a speedy trial was not violated. Accordingly, we find that the court correctly granted the Commonwealth's motion for extension of time.

Appellant next contends that the court erred in denying his motion to suppress. He argues that the search of his home was unlawful because the search warrant was improperly executed. Specifically, he alleges that the forceful entry into his home was a violation of the "knock and announce rule" (Pa.R.Crim.P. 2007). Appellant claims the knock and announce rule was violated since the officers, not knowing whether anyone was present, executed the search warrant by forceably entering the residence when no exigent circumstances existed.

Rule 2007 provides:

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to

any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

In the instant case, testimony at the hearing established that the officers knocked at the door, announced their identity and purpose, waited for a response, and forcibly entered when they received no response. Trial Court Opinion, November 24, 1982, at 15. Further, the evidence established that the police watched appellant's home for approximately one week prior to the search. A pattern was revealed in which appellant and other people appeared at the home in the early afternoon and remained until the early morning hours. On the day of the search, the police arrived at appellant's home at 11:00 a.m., and remained outside until 1:30 p.m. When no one appeared at the residence, the police commenced the search. The presence of exigent circumstances was unnecessary before the forceable entry into the residence since the police, complying with rule 2007(a), announced their identity, authority, and purpose and waited a reasonable period of time for a response before entering.

Appellant also contends that "forceful and violent entry ought not to be allowed if there is no response to a knock, unless the officer executing the search warrant is confronted by one of the exigent circumstances." Appellant's brief at 21. Section (c) of rule 2007, however, clearly states "[i]f the officer is not admitted after such reasonable period, he may forceably enter the premises." Upon a review of the record, we find that the action of the police officers was

reasonable under the circumstances and complied with Rule 2007.

Appellant also complains that the scope of the search was that of an exploratory search for evidence not specifically described in the warrant since the police seized not only items described in the warrant, but also items which were not described.[5] He argues that all forty-one of the items seized in the search should have been suppressed. We disagree and find that the police were not conducting a random exploratory search. Thus, for the reasons which follow, we conclude that appellant's argument lacks merit.

The Commonwealth contends that the seizure was justified by the "plain view" doctrine of *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In *Commonwealth v. Millard,* 273 Pa.Super. 523, 417 A.2d 1171 (1979), we explained this doctrine as follows:

> *Coolidge* 'emphasized that under the so-called "plain view" doctrine it would sometimes be permissible for police to seize items found while executing a search warrant naming other objects[.]' W. LaFAVE, 2 *Search and Seizure* 165 (1978); *see* 403 U.S. at 465–68, 91 S.Ct. at 2037–39. The police must come upon the evidence inadvertently, in a place where they have a legal right to be at the time of discovery, and it must be immediately apparent to them that the evidence is of incriminating character. *See* 403 U.S. at 465–69, 91 S.Ct. at 2037–40; *Commonwealth v. Jackson,* 227 Pa.Super. 1, 323 A.2d 799 (1974).

*Id.,* 273 Pa.Superior Ct. at 528, 417 A.2d at 1174. *See also Commonwealth v. Terra,* 292 Pa.Super. 250, 437 A.2d 29 (1981).

■ Upon examination of the record, we agree with the Honorable Thomas C. Raup's analysis of the items seized

---

5. The warrant in the instant case described the property to be seized with sufficient particularity and, on appeal, appellant does not challenge the descriptions in the warrant. Thus, in this appeal we are not presented with a question concerning the validity of the warrant itself, but only the execution of the search warrant.

from appellant's residence which met the above plain view requirements. The police came upon those items inadvertently, in a place where they had a legal right to be at the time of discovery, and the incriminating character of the items was apparent to the officers. It was apparent to the officers that those items were incriminating since they possessed significant characteristics of being stolen items. Thus, these items were legally seized.

 The suppression court then found that four of the items seized which were not described in the warrant "[did] not carry what in the court's opinion would be any immediately apparent incriminating characteristics." Suppression Court Opinion at 18. However, even if these items were illegally seized, this would only affect their admissibility and would not invalidate the entire search. The fact that items outside the warrant were taken does not necessitate suppressing those items which were legally seized. If a search is performed, "within permissible limits, the improper seizure of particular articles does not taint the search or the seizure of proper articles. 'Only those items improperly seized, or their poisoned fruit, are suppressible, since they are the only items with respect to which the defendants' Fourth Amendment rights were violated.'" *Commonwealth v. Jones*, 229 Pa.Super. 224, 235–36, 323 A.2d 879, 884 (1974) (footnote omitted). "[W]hile the police may not now make evidentiary use of the articles improperly seized, they may still introduce into evidence those things found on the premises which were legally seized." *Id.* Even if the four items in the instant case which were not described in the warrant were not properly seized pursuant to the plain view doctrine, they were never introduced into evidence at trial by the Commonwealth.[6] Thus, appellant suffered no prejudice and we find his arguments without merit.

Appellant's third argument is that he is entitled to a new trial since evidence of unrelated criminal conduct by appel-

6. The suppression court ordered that all items not contraband per se or derivative contraband be returned to appellant.

lant was received on several occasions during trial[7] and during the prosecution's closing arguments.

7. Appellant alleges that the following testimony from various witnesses created an inference in the minds of the jurors that appellant had engaged in prior criminal activity:

(1) During direct examination of Commonwealth witness, Richard Dortman, the following exchange occurred:

Q. Did Mr. Stewart make any comment to you about what to do with the guns if the police came?

A. The arrangement—I had agreed with Mr. Stewart if the police had come into the house with a warrant, that I would carry all the guns on my body with the drugs and say I was a guest in the house. N.T., January 11, 12 and 13, at 57.

Following this exchange the trial court gave a cautionary instruction to the jury.

(2) Mr. Dortman continued to testify as follows:

Q. Whose vehicle were you driving?

A. I was driving Edward Stewart's vehicle.

Q. What gun was in that vehicle?

A. 357 Magnum.

Q. Who had provided that gun to you?

MR. CAMPANA: I am going to object at this point. I don't think it is relevant to be brought out on direct and I object.

\* \* \* \* \* \*

BY MR. BROWN:

Q. Who provided that to you?

A. Ed Stewart. N.T., January 11, 12 and 13, at 59–60.

(3) Appellant also complains of Mr. Dortman's testimony during direct examination that appellant followed him as he left a tavern and then directed a group of other men to physically assault him.

(4) Appellant argues that the following exchange which occurred during direct examination of Jack Chapman by the Commonwealth was improper:

Q. Were you ever present when Eddy told someone else to take the gun out of the house to travel with it somewhere?

A. I was there when other people travelled with the gun in the car—

MR. CAMPANA: I am going to object to the question. The answer is not responsive to the question.

THE COURT: The answer is not directly responsive to the question. I am not going to order it stricken. However, I do feel that the objection is sustained—that the objection is proper and it is sustained.

MR. BROWN: To the question, Your Honor?

THE COURT: The answer is not responsive to the question. I am going to direct the answer be stricken.

Ladies and Gentlemen of the Jury, when I strike an answer or question from the record, then you are not permitted to consider that in your deliberations.

BY MR. BROWN:

■ The decision whether to grant a mistrial is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. Whiteman*, 336 Pa.Super. 120, 485 A.2d 459 (1984); *Commonwealth v. Colon*, 264 Pa.Super. 314, 399 A.2d 1068 (1979).

\* \* \* \* \* \*

Q. Who do you recall him—On the occasion you observed, who did he ask to take the shotgun out?

A. Me and Rick Dortman, Jack Gardner and there is another fella there, I can't remember who it was. He had the shotgun in the car. We were going over to the YMCA.

Q. Excuse me, I am going to ask you not to get into the reasons behind it—

MR. CAMPANA: I am going to object. Can we come to Sidebar?

N.T., January 11, 12 and 13, at 81–82.

(5) Commonwealth witness, Walter Morehouse, testified concerning the ownership of exhibit # 6, a .357 magnum with an obliterated serial number. Appellant alleges this testimony was improper.

(6) Appellant also alleges that the following exchange was improper between Mr. Morehouse and the Commonwealth:

Q. Did anything happen when you were coming to the Courthouse?

A. I was approached by—

MR. CAMPANA: Objection.

THE COURT: Overruled.

The Witness: I was approached by Eddy.

BY MR. BROWN:

Q. Was he with anybody?

A. Rick—I mean yes, he was with Kevin Hadders.

Q. Where was this?

A. On the Corner of Court and Willow.

Q. Did he say anything to you?

A. He asked me if I was going to testify.

Q. If you would repeat that conversation. What happened?

MR. CAMPANA: Objection, Your Honor.

THE COURT: Overruled.

BY MR. BROWN:

Q. Repeat the conversation.

A. He said to me if I testify it wouldn't be good for me.

Q. Did Mr. Stewart say that?

A. Eddy said it and so did Kevin Hadders.

Q. Yesterday morning, did you report that to me?

A. Yes, I did.

Q. Did that scare you what they told you?

A. Yes, considering what they did to another person.

MR. CAMPANA: Objection, Your Honor.

THE COURT: Overruled.

N.T., January 11, 12 and 13, 110–111.

■ With respect to evidence of other criminal activities of a defendant which have no relation to his current charges, the general rule is that the Commonwealth may not introduce such evidence. *Commonwealth v. Coburn,* 336 Pa.Super. 203, 485 A.2d 502 (1984). The Pennsylvania Supreme Court, however, has stated, " '[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial.' " *Commonwealth v. Richardson,* 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981) (*quoting Commonwealth v. Williams,* 470 Pa. 172, 178, 368 A.2d 249, 252 (1977)). Thus, there is "no per se rule requiring a new trial for every reference of this type. The decision whether to declare a mistrial when faced with these situations is addressed to the sound discretion of the trial judge." *Commonwealth v. Colon, supra,* 264 Pa.Super. at 321–22, 399 A.2d at 1071. *"The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required."* *Commonwealth v. Coburn, supra,* 336 Pa.Super. at 208, 485 A.2d at 505 (*citing Commonwealth v. Richardson, supra* ) (emphasis in original). When the court "is convinced beyond a reasonable doubt that the error did not contribute to the verdict, we may hold that reversal is not required because the error was harmless." *Commonwealth v. Green,* 315 Pa.Super. 564, 576–77, 462 A.2d 736, 742 (1983); *Commonwealth v. Weakland,* 273 Pa.Super. 361, 417 A.2d 690 (1979). Further, "[m]ere 'passing references' to prior criminal activity do not warrant reversal unless the record illustrates that prejudice resulted from the references." *Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 451, 444 A.2d 115, 118 (1982) (*citing Commonwealth v. Nichols,* 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979).

■ Applying these criteria to all of the challenged testimony in the instant case, we conclude that the remarks objected to did not rise to the level of depriving appellant of a fair and impartial trial and, therefore, no grounds for a

mistrial existed. Upon an independent review of the record, we find that the trial court in its opinion thoroughly examined and correctly disposed of appellant's arguments relating to the challenged testimony given at trial. (*See* footnote seven for the context of these arguments.)

■ Further, we find appellant's final argument in support of his contention that unrelated prior criminal activity by appellant was improperly introduced at trial to be without merit.[8] He argues that the District Attorney during closing argument indicated that appellant had been involved in other crimes by stating that minnows must be used to catch a shark. Upon review of the record available to us,[9] we find that the alleged comments did not constitute an improper reference to prior criminal activity, and, thus, the court did not abuse its discretion in denying appellant's motion for a new trial.[10]

In his remaining two arguments, appellant alleges that a conflict exists between 18 Pa.C.S. §§ 908, 6102 and 6106. He first argues that the court erred in refusing the following point for charge concerning the above statutes:

I hereby instruct you that the law of the Commonwealth of Pennsylvania allows someone to possess a firearm in their own home even though they do not have a license to do so. A firearm includes any shotgun with a barrel less than 24". If you find that Mr. Stewart was in possession of the sawed-off shotgun in this case, but that he was only in possession of said shotgun in his place of abode, then you must find him not guilty of the charge entitled 'prohibitive offensive weapon.'

Appellant's brief at 46. Second, appellant contends that the court erred in denying his motion in arrest of judgment

**8.** The trial court found that this argument was abandoned since appellant did not address it in his brief.

**9.** The District Attorney's closing argument was not recorded; only the discussion at sidebar concerning defense counsel's objection was recorded.

**10.** Even appellant in his brief acknowledges that "this issue, by itself, does not warrant a new trial." Appellant's brief at 42, n. 1.

which alleged a conflict between 18 Pa.C.S. §§ 908, 6102 and 6106.

During a search of appellant's residence, police seized, among other items, a 16 gauge sawed-off shotgun.[11] Appellant was subsequently charged and convicted of possessing a prohibited offensive weapon under section 908 of the Crimes Code. 18 Pa.C.S. § 908. On appeal, in support of both contentions four (4) and five (5), he argues that since the shotgun seized from his residence had a barrel length of $8\frac{3}{8}$ inches, it should be classified as a "firearm" under section 6102 and not a "prohibited offensive weapon" within section 908. Accordingly, he claims, under issue four (4), that the trial court erred in not instructing the jury that an individual may possess a "firearm" in their place of abode without a license, and alternately, he argues under issue five (5) that he should have been discharged because he was never charged with carrying a "firearm" without a license under section 6106. Finding no conflict between sections 908, 6102 and 6106, we firmly reject appellant's arguments.

In interpreting the statutes before us, our goal is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S. § 1921(a) (1964–83 Supp.); *Commonwealth v. Bigelow* 484 Pa. 476, 399 A.2d 392 (1979). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provision." 1 Pa.C.S. § 1921(a) (1964–83 Supp.). When interpreting a statute, "we are guided by the presumption that the legislature did not intend a result that is absured, unreasonable or impossible of execution." *Commonwealth v. Bigelow, supra,* 484 Pa. at 482, 399 A.2d at 394.

To analyze these statutes, we begin by examining the language of each statute. Section 908, prohibiting offensive weapons, defines the offense as follows: "A person commits a misdemeanor of the first degree if, except as

11. The barrel on the 16 gauge shotgun had been shortened to $8\frac{3}{8}$ inches.

authorized by law, he makes [,] repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." 18 Pa.C.S. § 908(a). The statute further provides:

> As used in this section 'offensive weapon' means any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

18 Pa.C.S. § 908(c). Section 6106(a), on the other hand, provides, "[n]o person shall carry a firearm in a vehicle or concealed on or about his person, except in his place, abode or fixed place of business, without a license therefore provided in this subchapter." Firearm is defined in section 6102 as "[a]ny pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, or any rifle with a barrel less than 15 inches."

That the legislature intended sections 908 and 6106 to apply to different weapons is evidenced not only by the language used in each statute, but also by the purpose behind each of the statutes. *See Commonwealth v. Ponds*, 236 Pa.Super. 107, 345 A.2d 253 (1975). Section 6106 recognizes that certain weapons have peaceful, as well as lethal potentialities and, thus, this section acknowledges that such "firearms" can be carried with a license.

 The purpose behind section 908, however, is much broader. This court has emphasized:

> "[t]he class of weapons dealt with in Section 908 have no peaceful purpose, and their only conceivable use is for purposes which our society has found to be criminal. By enacting Section 908 the legislature has clearly stated that an 'implement for the infliction of serious bodily injury which serves no common lawful purpose' shall not be allowed to exist in our society."

*Commonwealth v. Adams,* 245 Pa.Super. 431, 436, 369 A.2d 479, 482, (1976) (citation omitted). The broad purpose behind section 908 can be seen in the class of weapons which it prohibits, i.e., offensive weapons. This section reflects a strong public policy to prevent persons from carrying weapons or any "objects" which have the appearance or characteristics of an offensive weapon. *Commonwealth v. Adams, supra.* As this court stated in *Adams,* " '[t]he strength of this legislative prohibition is demonstrated by the fact that one can be convicted of violation of Section 908 for mere possession of the prohibited items even if there is no intent to employ such items criminally.' " *Id.,* 245 Pa.Superior Ct. at 435, 369 A.2d at 482 (citation omitted). This clearly indicates that the legislature intended to prohibit the items enumerated in section 908 from being in free circulation in society. *Commonwealth v. Ponds, supra.*

The extreme offensive character of a sawed-off shotgun is further evidenced by this court's decision in *Ponds, supra.* In *Ponds,* the court held:

> The legislature in Section 908 was not interested in the operability of a sawed-off shotgun but merely in its possession. The fact that a sawed-off shotgun is at a given time inoperable does not discount the danger which the legislature intended to prevent. The mere possession of an item identifiable as a sawed-off shotgun ... has no place nor possible use in the community and should be prohibited.

*Id.,* 236 Pa.Super. at 113, 345 A.2d at 256. *See also Commonwealth v. Rose,* 265 Pa.Super. 159, 401 A.2d 1148 (1979).

Further, the comment to Model Penal Code § 5.07, upon which section 908 was modeled, is illustrative of the type of weapons that the legislature intended to prohibit, as opposed to those excluded from prohibitive status. The comment states, "In the case of weapons, the legislature goes further, prohibiting absolutely, or with very narrow possibilities of justification, possession or dealing with certain kinds of weapons regarded as having substantially no law-

ful uses, *e.g.*, bombs, machine guns, *sawed-off shotguns,* blackjacks." Model Penal Code § 5.07, Comment, (Tent. Draft No. 13, 1961) (emphasis added). The comment continues as follows:

> [O]ther weapons like sporting rifles, shotguns and revolvers, and dangerous implements which have peaceful as well as lethal potentialities, like knives and straight razors, cannot be dealt with by drastic prohibition. Not only must we take account of the desires of sportsmen, farmers, and dealers in hunting equipment, we must also recognize that revolvers and knives are frequently carried for defensive purposes.

*Id. See also Commonwealth v. Rose, supra.*

> Citing the Model Penal Code, this court has noted: [I]t is useful to distinguish between those weapons which are offensive in themselves, meaning that the universal experience within our society has been that these weapons are used only in furtherance of crime, and those that can be *used* offensively, in the hands of one inclined to do so, but also have recognized uses of a socially acceptable nature. The latter are dealt with under sections of the Crimes Code.

*Commonwealth v. Adams, supra,* 245 Pa.Super. at 436, 369 A.2d at 482 (emphasis in original). *See also Commonwealth v. Jackson,* 336 Pa.Super. 609, 486 A.2d 431 (1984).

It is clear that section 908 was "intended to establish a prohibition very nearly absolute aimed at the implements or weapons themselves, whether enumerated or falling within the general definition, which are offensive by nature." *Commonwealth v. Adams, supra,* 245 Pa.Super. at 435, 369 A.2d at 481–82. (footnote omitted).

Appellant relies upon the district court case of *Commonwealth v. Zuback,* 14 Pa. D & C 3d 710 (1980), to support the argument that his weapon can be included in either sections 6106 or 908. In *Zuback,* defendant was charged with possession of a sawed-off shot gun in violation of section 908. Despite the clear prohibition of section 908 against carrying a sawed-off shot gun, the court held that a

sawed-off shotgun with a barrel length of 18 inches was a "firearm" under section 6102 and, thus, may be carried by an individual who has a license to carry "firearms" under section 6109. The district court clearly reached an erroneous result by ignoring the different purposes and legislative intent behind sections 6106 and 908.

We conclude that due to the offensive character of a sawed-off shotgun, the legislature intended such weapons to be prohibited under section 908, regardless of the length of the sawed-off barrel. When the barrel of a shotgun is sawed-off, the shotgun has been reshaped and *"specially adapted"* or altered for criminal purposes. 18 Pa.C.S. § 908(c) (emphasis added). This is precisely the type of weapon explicitly prohibited by section 908.

Accordingly, we find no conflict between sections 6102, 6106 and 908. The trial court correctly denied appellant's requested jury instruction and his motion in arrest of judgment.

Judgment of sentence affirmed.