J-A23001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAMERON VINSON | : | |
| | : | |
| Appellant | : | No. 1271 EDA 2017 |

Appeal from the Judgment of Sentence February 27, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0009048-2015

BEFORE:   PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 16, 2017**

Appellant, Cameron Vinson, appeals from the judgment of sentence entered on February 27, 2017, in the Court of Common Pleas of Montgomery County. On appeal, Vinson argues the Commonwealth presented insufficient evidence to sustain his convictions for prohibited offensive weapons (sawed-off shotgun), 18 Pa.C.S.A. § 908(a), and persons not to possess firearms, 18 Pa.C.S.A. § 6105(a)(1). We affirm.

In the early morning hours of November 21, 2015, Officer Kevin Hagan of the Norristown Police Department was on routine patrol in a marked police cruiser when he observed an SUV emerge from an alley, nearly hitting another car. Officer Hagan followed the SUV. He then watched as it ran two stop signs. At that point he activated the cruiser's lights and siren, but the

_____

* Former Justice specially assigned to the Superior Court.

SUV did not stop. A chase ensued and the driver, later identified as Vinson, eventually alighted from the SUV[1] and ran into a wooded area. Officer Hagan chased Vinson on foot. Vinson hid, but ultimately called out to the officer that he was giving up and Officer Hagan took him into custody. While walking back to the cruiser, Vinson "volunteered" "that there was a shotgun in the back seat of the car." N.T., Trial, 11/17/16, at 35.

Officer Christopher Middleton searched the SUV and, on the center console in the back seat, found a backpack. The backpack contained "three pieces of a double barrel shotgun," consisting of "the barrel, another piece to the barrel, and then the handle along with 13 live rounds of shotgun ammunition." *Id*., at 53. The barrel of the shotgun measured just 13.5 inches, an illegal length.

Prior to trial, Vinson moved to suppress the shotgun. After a hearing, the suppression court denied the motion and the matter later proceeded to a jury trial. At trial, the parties stipulated that Vinson had become a person who was not legally permitted to possess a firearm on May 26, 2011. The Commonwealth marked as an exhibit and entered into evidence the three pieces of the shotgun. In addition to his brief description of the parts, Officer Middleton testified he did not "know how to put the shotgun back together." *Id*., at 56-57.

_____

[1] Vinson did not own the SUV. The ownership of the vehicle was not an issue at trial.

The jury convicted Vinson of prohibited offensive weapons (sawed-off shotgun), 18 Pa.C.S.A. § 908(a), and persons not to possess firearms, 18 Pa.C.S.A. § 6105(a)(1). And the trial court later imposed an aggregate sentence of four to eight years' imprisonment. This timely appeal followed the denial of Vinson's post-sentence motions.

On appeal, Vinson argues the Commonwealth presented insufficient evidence to sustain the convictions.

> Our standard of review in a sufficiency of the evidence challenge is to determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Pruitt*, 951 A.2d 307, 313 (Pa. 2008) (citations omitted).

Vinson first challenges the sufficiency of the evidence demonstrating he constructively possessed the backpack containing the disassembled shotgun. "At most," he writes, "the evidence … established that [Vinson] knew the items were in the back of someone else's SUV." Appellant's Brief, at 14. We disagree.

As the officers did not recover the disassembled shotgun from Vinson's person, the Commonwealth had to establish "constructive possession," "a legal fiction" that is "a pragmatic construct to deal with the realities of criminal law enforcement." *Commonwealth v. Parker*, 847 A.2d

- 3 -

745, 750 (Pa. Super. 2004) (citation omitted). The concept is "an inference arising from a set of facts that possession of the contraband was more likely than not." *Id*. (citation omitted). Constructive possession is "'conscious dominion,'" *id*. (citation omitted), which is "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996) (citation omitted). "To aid application … constructive possession may be established by the totality of the circumstances." *Parker*, 847 A.2d at 750 (citation omitted).

We have little difficulty concluding the Commonwealth presented sufficient evidence to prove Vinson constructively possessed the backpack containing the disassembled shotgun. Vinson fled the SUV, attempting to evade the police by hiding in a wooded area. Flight demonstrates his consciousness of guilt. *See Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa. Super. 2016). And upon apprehension he voluntarily admitted the backpack contained a "shotgun." The totality of the circumstances reveals Vinson's power to control the contraband and the intent to exercise that control—not simply, as Vinson asserts, that he knew the items were in the back of someone else's SUV, but had no conscious dominion over them.

Vinson next argues the Commonwealth presented insufficient evidence to sustain his convictions, alleging the Commonwealth failed to present evidence the three pieces could be assembled into a shotgun. As he succinctly puts it, "[T]he Commonwealth failed to establish that the three

pieces in the backpack *could* be put together." Appellant's Brief, at 14 (emphasis in original).

As mentioned, Officer Middleton testified the backpack contained "three pieces of a double barrel shotgun; it was the barrel, another piece to the barrel, and then the handle along with 13 live rounds of shotgun ammunition." N.T., Trial, 11/17/16, at 53. And he readily conceded he did not "know how to put the shotgun back together." ***Id***., at 56-57.

With that background testimony in mind, we will address each conviction separately.

> In order to obtain a conviction under 18 Pa.C.S.[A]. § 6105 the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm.

***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa. Super. 2009).

Vinson does not dispute that he was prohibited from possessing a firearm due to a prior conviction. Instead, he singularly relies on the assertion that the three pieces of the disassembled shotgun were not shown by the Commonwealth to constitute a firearm.

"[T]he term 'firearm' shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S.[A]. § 6105(i). ***See also Thomas***, 988 A.2d at 671-672. Operability is not an issue. ***See id***., at 672 ("The statutory language is clear, and it does not

require proof that the weapon was capable of expelling a projectile when it was seized[.]"; "[T]he use of the terms 'frame' and 'receiver' in section 6105(i) demonstrates that the legislature sought to eliminate the operability requirement….")

Admittedly, the Commonwealth took a rather unconventional approach in proving the three *pieces* constituted a firearm. For example, the Commonwealth did not present a witness who could assemble the pieces into a shotgun, nor did they present a witness who testified explicitly that a specific piece of the shotgun was the "frame or receiver."[2] But, in any event, the jury was certainly given enough information to infer and conclude the pieces constituted a firearm.

What is most important is Vinson's admission as testified to by Officer Hagan, which the jury obviously credited. As the Commonwealth aptly explains:

> [Vinson's] prior admissions prove his contention that the parts could not fit together into an operable weapon dubious. When [Vinson] informed the officers of the existence of the weapon, he did not say there were … pieces of a weapon, he did not say there was a backpack, he did not say that there were three unidentifiable pieces; instead, he informed officers that there was a *shotgun* in the backseat of the vehicle. In other

_____

[2] The Pennsylvania Uniform Firearms Act of 1995 does not define "frame or receiver." Nor is there a definition provided in the Pennsylvania Code. Federal regulations, however, define the term as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 CFR § 478.11 Meaning of terms.

words, [Vinson] knew exactly what would be assembled if and when the pieces were put together.

Commonwealth's Brief, at 13 (emphasis added). Buttressing this admission is Vinson's flight, which, as mentioned, is indicative of consciousness of guilt—why run from innocuous parts in a bag? And then are the thirteen live shotgun rounds found in the backpack, an indication the pieces, once assembled into a shotgun, could fire them.

Accordingly, we find the Commonwealth presented sufficient evidence to permit the jury to infer the three pieces constituted a firearm, namely a sawed-off shotgun, thus sustaining the conviction for persons not to possess firearms.

A sawed-off shotgun is a shotgun that has "a barrel less than 18 inches" in length and constitutes a prohibited offensive weapon. **See** 18 Pa.C.S.A. § 908(a), (c). Again, like the former offense, operability is not an issue. **See Commonwealth v. Ponds**, 345 A.2d 253, 256 (Pa. Super. 1975) ("There is no such [operability] requirement spelled out in Section 908, and we therefore conclude that the legislature did not intend to impose the operability requirement to Section 908…."; "The mere possession of an item identifiable as a sawed-off shotgun, even though inoperable is still an ominous presence, and has no place nor possible use in the community and should be prohibited.") "To establish a violation of the statute prohibiting the carrying of a sawed-off shotgun, it is sufficient to show that the weapon

possessed the outward appearance and characteristics of a sawed-off shotgun." *Id*.

Here, we have already concluded the Commonwealth presented sufficient evidence to establish the three pieces constituted a shotgun. And Officer Middleton testified the barrel measured just 13.5 inches, well below the legal length of 18 inches. *See* N.T., Trial, 11/17/16, at 55. Accordingly, we find the Commonwealth presented sufficient evidence to sustain the conviction for prohibited offensive weapon (sawed-off shotgun).

Judgment of sentence affirmed.

Judge Dubow joins in the memorandum.

Justice Fitzgerald concurs in the result.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *11/16/2017*