369 A.2d 479
**COMMONWEALTH of Pennsylvania**

**v.**

**Stephen ADAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 16, 1975.

Decided Nov. 22, 1976.

432

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, Dist. Atty., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This appeal requires our interpretation of the section of the new Crimes Code prohibiting the possession of offensive weapons.[1] We hold that the appellant in this case, who was in possession of a set of nunchaku sticks, was not in violation of that statute.

The nunchaku is an implement used in the martial arts and was originally developed in Southeast Asia. Its form recalls a small agricultural flail: two sticks of wood, about a foot long, hinged end to end by a short cord so as to allow freedom of swivel. The karate student by holding one of the sticks can swing or twirl the freely moving part in patterns or can bring both sticks together in the fashion of a nutcracker.

At 8:15 in the evening of January 2, 1975 the appellant was observed at the corner of Slocum and Stenton Avenue with nunchaku sticks in his back pocket. The officer who stopped him noted that the nunchaku was visible, pushing up appellant's jacket in the back. The officer seized the nunchaku and appellant was placed un-

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 908.

der arrest for possessing a prohibited offensive weapon. At his municipal court trial, appellant testified that he was on his way to a karate school on Stenton Avenue where he was going to be working out with the nunchaku. After a finding of guilty by the municipal court judge, appellant's sentence was suspended and he was placed on probation for a year.

The Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 908, prohibiting offensive weapons, defines the offense as follows: "A person commits a misdemeanor of the first degree if, except as authorized by law, he makes [,] repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." The statute further provides that the term " 'offensive weapon' means any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose." Nunchaku sticks, not surprisingly, are not specifically enumerated as examples of offensive weapons. If they are to be proscribed, therefore, it must be possible to include them under the general definition contained in the section prohibiting "other implement[s] for the infliction of serious bodily injury which [serve] no common lawful purpose." The nunchaku clearly could inflict serious bodily injury when wielded by an expert operator; consequently we need only determine whether it could serve a common lawful purpose within the meaning of the section.

To decide what implements can be recognized as having a common lawful purpose, even though they may also be adaptable for the infliction of injury, we must examine the origin and purpose of the section. The commentary to § 5.07 of the Model Penal Code, upon which § 908

of our Crimes Code is based, sheds some light on the nature and intent of the prohibition. "In the case of weapons, the legislature goes further, prohibiting absolutely, or with very narrow possibilities of justification, possession or dealing with certain kinds of weapons regarded as having substantially no lawful uses, *e. g.*, bombs, machine guns, sawed-off shotguns, blackjacks. . . . Other weapons like sporting rifles, shotguns and revolvers, and dangerous implements which have peaceful as well as lethal potentialities, like knives and straight razors, cannot be dealt with by drastic prohibition. Not only must we take account of the desires of sportsmen, farmers, and dealers in hunting equipment, we must also recognize that revolvers and knives are frequently carried for defensive purposes." Model Penal Code § 5.-07, Comment (Tent. Draft No. 13, 1961). It is thus clear that at its conception the section was intended to establish a prohibition very nearly absolute,[2] aimed at the implements or weapons themselves, whether enumerated or falling within the general definition, which are offensive by nature. This Court has cited with approval the comments to this section of The Model Penal Code, noting that it is unnecessary to prove an intent to employ the weapon criminally in order to convict for possession of an offensive weapon. *Commonwealth v. Gatto,* 236 Pa.Super. 92, 344 A.2d 566 (1975). "The strength of this legislative prohibition is demonstrated by the fact that one can be convicted of violation of Section 908 for mere possession of the prohibited items even if there is no intent to employ such items criminally." *Common-*

---

2. The narrow area in which exceptions exist is provided for as follows: "It is a defense under this section for the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, or that he possessed it briefly in consequence of having found it or taken it from an aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully." Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 908(b).

**436** 

*wealth v. Ponds,* 236 Pa.Super. 107, 112, 345 A.2d 253, 256 (1975).

██ In this context it is useful to distinguish between those weapons which are offensive *in themselves* meaning that the universal experience within our society has been that these weapons are used only in furtherance of crime, and those that can be *used* offensively, in the hands of one inclined to do so, but also have recognized uses of a socially acceptable nature. The latter are dealt with under separate sections of the Crimes Code. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 907. *See Commonwealth v. McNear,* 238 Pa.Super. 177, 353 A.2d 39 (1975). Section 908 is designed to prohibit the former in every circumstance and to eliminate totally such weapons, except in the most narrow and obvious situations, thereby implementing the policy of the statute that such items will not be used for any purpose.[3] "The class of weapons dealt with in Section 908 have no peaceful purpose, and their only conceivable use is for purposes which our society has found to be criminal. By enacting Section 908 the legislature has clearly stated that an 'implement for the infliction of serious bodily injury which serves no common lawful purpose' shall not be allowed to exist in our society." *Commonwealth v. Ponds,* supra, 236 Pa.Super. at 111, 345 A.2d at 255 (footnote omitted).

██ With these purposes in mind, we now look to the nunchaku found in appellant's possession. As we said previously, there is no doubt that the nunchaku can be used offensively, as can a golf club or a baseball bat, to inflict serious injury. However, a student or instructor of the martial arts would have occasion to use the nunchaku in the peaceful practice of karate exercises. The

---

3. For example, the item may be possessed as a museum piece, or briefly after having found it, presumably enroute to destroying it. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 908(b).

martial arts are practiced by many citizens of this Commonwealth as a sport and an exercise. To eliminate the use, possession and sale of items used in this sport simply because they could conceivably be used to inflict bodily injury is contrary to the express purpose of Section 908.

Judgment of sentence vacated and appellant discharged.

SPAETH, J., files a concurring opinion, in which HOFFMAN, J., joins.

PRICE, J., dissents.

SPAETH, Judge, concurring:

I join in the order vacating the judgment of sentence and discharging appellant, for I agree with the majority that nonchaku sticks are not "offensive weapons" within § 908 of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 908. I wish, however, to note a reservation.

The majority cites *Commonwealth v. Ponds*, 236 Pa. Super. 107, 345 A.2d 253 (1975), and *Commonwealth v. Gatto*, 236 Pa.Super. 92, 344 A.2d 566 (1975), for the proposition that "it is unnecessary to prove an intent to employ the weapon criminally in order to convict for possession of an offensive weapon." at 482. Since the majority concludes, correctly, that nunchaku sticks are not "offensive weapon[s]," this proposition is irrelevant: as appellant did not possess "an offensive weapon", the question never arises whether it is necessary to prove "an intent to employ the weapon criminally."

Appellant has argued that § 908 is unconstitutional. His argument may be summarized as follows. § 908(a) prohibits possession of an offensive weapon. § 908(b), however, provides:

It is a defense . . . for the defendant to prove by a preponderance of the evidence that he possessed or

dealt with the weapon solely as a curio or in a dramatic performance, or that he possessed it briefly in consequence of having found it or taken it from an aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully.

According to appellant, this provision unconstitutionally imposes on him the burden of disproving *mens rea*. *See generally In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

§ 908(b) does seem, at least arguably, to assume a defendant with *mens rea*, for it allows a defendant to exculpate himself by proof "negativing any intent [on the defendant's part]" to use the weapon "unlawfully." Query: If this is so, does § 908(b) import *mens rea* into § 908(a)? Suppose, for example, that the defendant is charged under § 908(a) with possession of a hand grenade. If he defends under § 908(b) by saying that he possessed it "solely as a curio," is he, or is he not, saying that he possessed it without *mens rea*? If he is saying that he possessed it without *mens rea*, a rather curious situation is created: A defendant guilty under § 908(a), which under *Ponds* and *Gatto* does not require proof of *mens rea*, may exculpate himself by proving under § 908(b) that he did not have *mens rea*, in other words, that he did not have what the Commonwealth was not required to prove he had.

Here, we need not struggle with the problems suggested by this possible anomaly. Since we have concluded that § 908 is inapplicable, we never reach the question whether it is constitutional. In another case, however, we probably will reach that question. When we do, we may find it necessary to reconsider *Ponds* and *Gatto*. The reservation I wish to note now is that I do not think our reconsideration should be made more difficult by repeated, unnecessary citation of *Ponds* and *Gatto*,

which suggests (except as to Judge HOFFMAN, who dissented in *Ponds*) that we are sure they were correctly decided. I, at least, am not sure.

HOFFMAN, J., joins in this opinion as well as the majority.