In the Interest of **JOHN DOE**, born on August 9, 1974, a child under the age of eighteen years, Minor–Appellant.

NO. 15931

(FC–J 20341)

JULY 20, 1994
As Amended by Order Dated July 27, 1994

BURNS, C.J., HEEN, AND ACOBA, JJ.

OPINION OF THE COURT BY ACOBA, J.

While the Defendant Minor (hereinafter Defendant) was changing a tire on his truck, he was arrested by the police for a curfew violation. The police subsequently seized a wooden implement from his truck and charged

Defendant with carrying a "billy" in a vehicle, in violation of Hawai'i Revised Statutes (HRS) § 134–51 (Supp. 1991).[1] Defendant appealed from the family court's February 10, 1992 Findings of Fact, Conclusions of Law and Order denying Defendant's motion to suppress the seizure of the implement and Defendant's motion to reconsider which had attacked the applicability of HRS § 134–51 on various grounds, and from the guilty finding in the February 10, 1992 Decree Re: Law Violation Petition. The suppression portion of the Order need not be determined on appeal under our disposition of the case.

That part of HRS § 134–51 applicable to this case states, "Any person not authorized by law, who carries . . . within any vehicle used . . . by the person . . . any . . . billy . . . or other deadly or dangerous weapon, shall be guilty of a misdemeanor." The court concluded as a matter of law, that the implement "falls within the definition of . . . 'billy' as that term is used in HRS Section 134–51." The court's conclusions of law are freely reviewable on appeal. *State v. Ferraro*, 8 Haw. App. 284, 290, 800 P.2d 623, 628 (1990).

## I.

Received in evidence as State's Exhibit 1, the purported "billy" is a wooden implement sixteen and one–fourth inches in length, cylindrically shaped, with a knobbed handle at its grip end. The diameter of the handle base is two and seven–sixteenths inches. The head end is flat at the top, measuring two inches in diameter.

---

[1] Defendant was also charged with curfew violation, harassment, and property damage in the third degree. The property damage charge was dismissed with prejudice. The family court found Defendant not guilty of curfew violation and harassment.

The circumference of the implement measures seven and seven–eighths inches at its widest point, and five and one–fourth inches at its narrowest point. The trial court found it was "similar to the shape of a baseball bat."

The purpose of the implement is to stun or kill fish. The parties stipulated that the implement was made by Defendant's friend in the school wood shop for Defendant. The parties also stipulated that the shop teacher "in the past permitted students to make clubs of the kind that's [sic] involved in this case for purposes of killing fish." Defendant's undisputed testimony is that he "use[d] it to knock out the fish instead of . . . a gun . . . ." The arresting officer himself testified that the implement resembled equipment used to kill fish. [2]

Also received in evidence was Defendant's Exhibit 3, an "aluminum fishing club." The implement is seventeen and three–fourths inches in length, cylindrically shaped, with a knobbed handle at its grip end. The diameter of the handle base is two inches. The rounded head end measures two and one–fourth inches in diameter. The circumference of the implement measures seven and one–fourth

---

[2] The officer testified as follows:

Q.    Have you — do you have any familiarity with people that go fishing out — out in the ocean?

A.    Yes, I do.

Q.    Uh, is a club one of the pieces of — of equipment that a fisherman frequently has as part of his equipment?

A.    Uh, yes

Q.    And the club is used to kill the fish?

A.    That is correct.

Q.    Have you seen clubs similar in size and shape as to State's 1, uh, as part of the paraphernalia that a fisherman has?

A.    Um, yeah. I would — I would say I did.

inches at its widest point and three and one–fourth inches at its narrowest point. It also resembles a small baseball bat and is heavier than the wooden implement.[3] The parties stipulated that the metal implement was an "aluminum fish club ... made available for sale ... [at two] [f]ishing [s]upply" stores and purchased from one of them.

The aluminum fishing club closely resembles the wooden implement found in Defendant's truck. Based on the evidence, then, the court properly found that "clubs such as State's Exhibit 1 [the wooden club] are used by fishermen for the purpose of killing large fish caught on the open sea." The court concluded that "the wooden club . . . was designed to be used as a weapon for striking animals on the head."

The term "billy" is not statutorily defined. However, "billy" is almost universally defined as a "policeman's club" or "truncheon."[4]

---

[3] Both State's Exhibit 1 and Defendant's Exhibit 3 are part of the record on appeal and were available for inspection by the appellate court.

[4] BLACK'S LAW DICTIONARY 213 (4th ed. 1968) states that a "billy" is a "small bludgeon that may be carried in the pocket; a club; especially, a policeman's club." Likewise, the Second College Edition of THE AMERICAN HERITAGE DICTIONARY 179 (2d ed. 1982) deems "billy club" to mean "a short wooden club, esp. a policeman's club." THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH 89, 1151 (7th ed. 1982) explains that a "billy" is a "policeman's truncheon." It defines "truncheon" as "a short club or cudgel e.g. that carried by policeman." Similarly, the SCRIBNER–BANTAM ENGLISH DICTION-ARY 93, 977 (1st ed. 1977) describes "billy" as a "truncheon" which is a "policeman's club." BALLENTINE'S LAW DICTIONARY 183 (3d ed. 1969) does not differ from these sources, stating that a "billy" is "a club carried by a policeman." THE RANDOM HOUSE COLLEGE DICTION-ARY 134, 324 (rev. ed. 1980) also finds that a "billy" is a "policeman's club or baton."

Even the arresting officer defined a "billy club" as a "police officer's night stick." According to the officer a billy club is "a long stick . . . [with] a small handle." [5]

All the evidence at trial established that Defendant's wooden club was a "fishing club," not a "policeman's club" or "truncheon." Thus, a club–like implement designed for the purpose of striking or killing fish is not a "billy" as that term is used in HRS § 134–51. Rather, the term "billy" as used in HRS § 134–51 refers to a "policeman's club" or "truncheon."

## II.

The family court had concluded that the fishing club "could be used as a deadly weapon against either large fish or humans." But HRS § 134–51 does not reach so far. "The statute is founded upon public policy having for its principal object the preservation of human life. . . ." *State v. Ogata*, 58 Haw. 514, 520, 572 P.2d 1222, 1226 (1977). And in construing the statute the Hawai'i Supreme Court has said, "the statute . . . bring[s] within its ambit instruments closely associated with criminal activity whose sole design and purpose is to inflict bodily injury or death *upon another human being*." *State v. Rackle*, 55

---

[5] The officer testified as follows:

Q. Officer Thomas, uh, how do you define a "billy club"?

A. Just by the shape and the, uh, by looks, I suppose.

Q. When you say "shape," what do you mean by "shape"?

A. Well, it looks — it's a small stick, uh, with a handle. Uh, we have a billy club, and it's a long stick. It's got a small handle, and it's just the shape of a billy club.

Q. The — the stick, when you say, "We have a stick," are you referring to the police officer's night stick?

A. My — my night stick. That is correct.

Haw. 531, 537, 523 P.2d 299, 303 (1974) (emphasis added). Thus, HRS § 134–51 extends only to weapons deadly or dangerous to people.

The possibility that a fishing club "could be used" as a weapon against "humans" does not bring it within the statutory proscription. "The fact that an object originally designed for normal or lawful use can be perverted to a use dangerous to one attacked does not convert it into a 'deadly or dangerous weapon' within the meaning of [the] statute." *State v. Giltner*, 56 Haw. 374, 376, 537 P.2d 14, 16 (1975). In refining its interpretation of HRS § 134–51, the Hawai'i Supreme Court has distinguished those weapons which "'can be *used* offensively . . . but also have recognized uses of a socially acceptable nature'" from those weapons which are offensive in themselves. *State v. Muliufi*, 64 Haw. 485, 488, 643 P.2d 546, 548 (1982) (quoting *Commonwealth v. Adams*, 245 Pa. Super. 431, 436, 369 A.2d 479, 482 (1976))(emphasis in original) (nunchaku sticks not considered dangerous weapons). *See also, State v. Giltner*, 56 Haw. 374, 537 P.2d 14 (1975) (diver's knife not considered "dagger"). The "fishing club" here may be so distinguished. Thus, "if the health, safety, and welfare of the public" require the inclusion of fishing clubs under HRS § 134–51, the "means of providing such [inclusion] lies solely within the province of the legislature." *State v. Rodrigues*, 56 Haw. 642, 643 n.2, 547 P.2d 587, 588 n.2 (1976).

## III.

Accordingly, with respect to its determination of a violation of HRS § 134–51 and a finding of guilt therefor, the family court's Order filed on February 10, 1992, and

Decree Re: Law Violation Petition(s) filed on February 10, 1992 are reversed.

*Todd W. Eddins* and *Theodore Y. H. Chinn* (*Toby M. Tonaki*, Law Student Intern with them on the brief), Deputy Public Defenders, on the brief for defendant–appellant.

*Barbara T. Takase* (*J. William Vroom* and *Kevin S. Hashizaki*, Law Student Interns with her on the brief), Deputy Prosecuting Attorney, County of Hawaii, on the brief for plaintiff–appellee.