## Commonwealth v. Yeager

*Jonelle Harter, assistant district attorney,* for the Commonwealth.

*Samuel K. Gates,* for defendant.

UHLER, *J.,* September 30, 1994—Before the court is defendant's, Timothy Alan Yeager's, motion to quash the information with respect to the charges of aggravated assault and recklessly endangering another person. A hearing was held on defendant's motion August 11, 1994. The court, in making its factual determinations, relies on the preliminary hearing transcript which shall be incorporated into this opinion.

The testimony elicited at the May 25, 1994, preliminary hearing indicates that during the early morning hours of February 6, 1994, the defendant, Adam Ankers and Michelle Cornett were arguing over the phone with Travis Cornett. Mr. Cornett testified that he was originally arguing only with his sister, Michelle, and that he did not recognize the voices of the other two men. Approximately 15 minutes after the conversation ended, the defendant and Mr. Ankers knocked on Mr. Cornett's door. After looking through a peephole in the door to see who it was, Mr. Cornett called his brother, Joseph

Cornett, who lived next door, and told him that he "might want to come over." Transcript, pp. 5-6.

Travis Cornett then opened the door and the argument resumed. The testimony revealed that the defendant and Mr. Ankers wanted Travis to fight them at Shrewsbury playground and that when the latter refused, Mr. Ankers hit him in the jaw. The two men then fell inside the apartment and began wrestling. As this happened Travis recalled that "Tim pulled something out of his pants. I couldn't see what it was. And Tim is yelling for Adam to hold me. And Adam is yelling [at the defendant] to hit me." Transcript, p. 8. Travis testified that the defendant struck him with the object "many times," mostly in the back. Transcript, pp. 8-9.

Joseph Cornett then entered the apartment. The testimony conflicted as to whether or not Joseph made contact with the defendant when he came in, but Joseph and Jane Russell, Travis' girlfriend, testified that soon after Joseph entered the kitchen the defendant struck him at least three times on the head with num-chuks. Joseph testified that the third blow knocked him completely to the floor and while still on his back, he pulled a .45 caliber automatic pistol from his waistband and pointed it at his assailant, who turned and ran. Joseph recalled that as the defendant was running down the steps of Travis' apartment he fired a shot at the door jamb "maybe out of frustration, maybe out of the thought that someone else was still in here...." Transcript, p. 25. Mr. Ankers fled after the shot was fired.

Travis Cornett stated that as a result of the attack he suffered from back pain, had bruises and marks on his back and had difficulty moving an arm. However, he did not need medical treatment for these injuries.

Joseph Cornett received a four inch gash under the hairline on the left side of his head. Medical personnel

needed seven stitches to close the wound. Joseph also testified that he had a "knot" on the back of his head from the final blow and suffered from a "splitting headache" the next day. However, Joseph did not require medical attention for anything other than the cut and did not miss any work.

Initially, we note that where a habeas corpus proceeding has been instituted, the court must determine whether or not the Commonwealth has met its burden of proof at the preliminary hearing. The Pennsylvania Superior Court has stated:

"At a preliminary hearing the Commonwealth bears the burden of establishing a prima facie case that a crime has been committed and that the accused is probably the one who committed it. (citation omitted) To sustain that burden the Commonwealth must produce evidence that, if accepted as true, would warrant the trial judge to allow the case to go to the jury. (citation omitted) The prima facie standard requires that the Commonwealth produce evidence of the existence of each and every element of the crime charged; consequently, absence of evidence as to the existence of a material element is fatal. (citation omitted) This standard does not require that the Commonwealth prove the elements of the crime beyond a reasonable doubt nor that evidence is available that would prove each element at trial beyond a reasonable doubt." (citation omitted) *Commonwealth v. Austin,* 394 Pa. Super. 146, 150-51, 575 A.2d 141, 143 (1990).

## I. AGGRAVATED ASSAULT

"(a) A person is guilty of aggravated assault if he:

"(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or reck-

lessly under circumstances manifesting extreme indifference to the value of human life; ...

"(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon; . . ." 18 Pa.C.S. §2702(a)(1)(4).

The General Provisions Chapter of the Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. §2301.

The same section of the Crimes Code defines "deadly weapon" as:

"Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. §2301.

The defendant argues that the testimony given at the preliminary hearing regarding the extent of the Cornetts' injuries does not give "rise to the definition of serious bodily injury. Certainly, it is bodily injury, but it's not serious bodily injury, so I ask that that [charge] be dismissed." Transcript, pp. 50-51. The Commonwealth argues that the manner in which the defendant used the num-chuks fits the definition of "deadly weapon" employed in 18 Pa.C.S. §2702(a)(4) and that the defendant intentionally caused bodily injury with them.

Accepting the preliminary hearing testimony as true, we are satisfied that the Commonwealth has made out a prima facie case of aggravated assault on both counts. The defendant unquestionably impaired the physical condition of Joseph and Travis Cornett. As a result of the attacks, Travis had redness and swelling on his back, suffered from back pain and had trouble moving an arm; Joseph needed seven stitches to close a head wound and had a "knot" on the back of his head.

Further, we believe that the num-chuks, as used here, fall within the definition of "deadly weapon" as set forth in the Crimes Code. Jane Russell described the num-chuks wielded by the defendant as two twelve inch long sticks of wood attached by a chain. Transcript, p. 38. The manner in which the defendant used them on Travis and Joseph Cornett likely would have produced death or serious bodily injury if he had not been stopped. See *Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973) (stating that a stomping boot could be a sufficient weapon to make an assault aggravated).

The defendant's reference to *Commonwealth v. Adams,* 245 Pa. Super. 431, 369 A.2d 479 (1976) is inappropriate. In *Adams,* the Pennsylvania Superior Court held that num-chuks were not an "offensive weapon" within the meaning of 18 Pa.C.S. §908 because they can be used in a non-criminal manner.

Whether or not a weapon can or cannot be used in a non-criminal manner is irrelevant to the court's determination here. Clearly, num-chuks can be used lawfully and peacefully during martial arts training but can easily become a deadly force for purposes of section 2301. Accordingly, we find a sufficient basis for the aggravated assault charges.

## II. RECKLESSLY ENDANGERING ANOTHER PERSON

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. §2705.

The defendant argues that these charges should be dropped because a recklessly endangering another person charge is "predicated upon [an] aggravated assault

with a deadly weapon," and num-chuks are not a deadly weapon under *Adams.* Transcript, p. 51. The Commonwealth argues that the manner in which the num-chuks were used created "a very real possibility of serious bodily injury." Transcript, p. 52.

Again, accepting the preliminary hearing testimony as accurate, we are satisfied that the Commonwealth had made out a prima facie case of recklessly endangering another person on both counts. The Pennsylvania Superior Court has held that section 2705 "retains the common-law assault requirement of actual present ability to inflict harm" and that "[d]anger, and not merely the apprehension of danger, must be created" to support a recklessly endangering another person charge. *Commonwealth v. Trowbridge,* 261 Pa. Super. 109, 115, 395 A.2d 1337, 1340 (1978).

We believe that hitting a person with num-chuks repeatedly in the back or head evidences a present ability to inflict harm and creates a danger of death or serious bodily injury. Indeed, if Joseph Cornett had not brandished a gun, both he and his brother might have been killed. Accordingly, we find a sufficient basis for the recklessly endangering another person charges.

In summary, we hereby deny defendant's motion to quash the information with respect to the charges of aggravated assault and recklessly endangering another person.

An appropriate order shall be entered.

## ORDER

And now, to wit, September 30, 1994, the defendant's motion to quash the information is denied with respect to the charges of aggravated assault and recklessly endangering another person.