J-S19010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                               :              PENNSYLVANIA
                                               :

             v.                                       :
                                             :

MICHAEL JAMES FLORY              :
                                               :

           Appellant                  :       No. 1175 MDA 2022

Appeal from the Judgment of Sentence Entered July 20, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004135-2021

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:             **FILED AUGUST 28, 2023**

Appellant, Michael James Flory, appeals from the judgment of sentence of one year of non-reporting probation imposed following his conviction for one count of prohibited offensive weapon, 18 Pa.C.S. § 908(a). Appellant contends that the trial court erred by allowing the Commonwealth to present evidence of threatening behavior towards his family. We affirm.

The facts are straightforward. Appellant lived in the home of Ursula, his paternal grandmother. On May 15, 2021, Appellant's father, James, called the police, relating that Ursula expressed concerns about Appellant's behavior and wanted the police onsite while she retrieved some belongings. Officer Alexander Schrift arrived and entered the home with James and another family member. Officer Schrift tried to "defuse the situation and make sure there wasn't any aggression between [Appellant] or any of his other family members." N.T., 5/25/22, at 132. Appellant, who was in his bedroom,

"seemed to be very agitated and wasn't very happy with his family." *Id.* at 133. While speaking to Appellant, Officer Schrift observed a pair of brass knuckles on a piece of furniture he described as a dresser. *Id.* at 140. Officer Schrift was wearing a body camera and recorded the incident, and the jury saw Appellant's bedroom and portions of his aggressive behavior, including Appellant stating "that he was going to stomp [his family] out and that it would be the police's fault … in that circumstance." *Id.* at 138. Appellant testified, stating that he always had an affinity for brass knuckles as a curiosity item, and that he used the knuckles to hold down papers.

The jury convicted Appellant and he was sentenced as previously stated. Appellant timely filed a notice of appeal and complied with the trial court's order to file a concise statement of matters complained of on appeal. Appellant raises two claims on appeal, both of which concern the admission of portions of the recording:

> I. Did the lower court abuse its discretion in admitting video evidence pursuant to Pa.R.E. 404(b), showing [Appellant] making angry and threatening statements toward his father, in order to show [Appellant] did not intend to possess metal knuckles as a curio?
>
> II. In the alternative, if the video evidence the Commonwealth presented was admissible under Rule 404(b), did the lower court abuse its discretion in excluding evidence from the same video to show context on hearsay and relevance grounds?

Appellant's Brief at 4.

We apply the following principles to the trial court's determination to admit evidence:

> Our standard of review with respect to evidentiary rulings has been long established: The trial court's rulings will not be disturbed absent an abuse of discretion. *See Commonwealth v. Thompson*, 779 A.2d 1195, 1200 (Pa. Super. 2001). The trial court abuses its discretion if "it misapplies the law or [rules] in a manner lacking reason." *Commonwealth v. Rega*, 856 A.2d 1242, 1244 (Pa. Super. 2004) (citation omitted).

*Commonwealth v. Einhorn*, 911 A.2d 960, 967 (Pa. Super. 2006) (citation omitted).

The Commonwealth agreed that the comments and conduct displayed on the body camera footage qualified as material that is generally barred by Rule 404(b), which prohibits the admission of "any other crime, wrong, or act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). The Commonwealth informed Appellant pre-trial that it intended to play the entire video. *See* Pa.R.E. 404(b)(3) (requiring prosecution to "provide reasonable written notice in advance of trial … of the … reasoning for the use of any such evidence the prosecution intends to introduce at trial"). The Rule states that other act evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). In criminal cases, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

Appellant filed a motion to exclude the evidence. At a pre-trial hearing, the Commonwealth argued that the evidence was admissible under a *res gestae* theory of relevance. That exception is not among those listed in Rule

404(b)(2), but that list is not exclusive, *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988), and the courts have recognized the "'*res gestae*' exception to the general proscription against evidence of other crimes[,] … also known as the 'complete story' rationale, *i.e.*, evidence of other criminal acts is admissible 'to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *Id.* *See also Commonwealth v. Brown*, 52 A.3d 320, 332 (Pa. Super. 2012) ("In sum, the history of the *res gestae* exception demonstrates that it is properly invoked when the bad acts are part of the same transaction involving the charged crime.").

The trial court rejected the Commonwealth's argument and ruled that the evidence was inadmissible "unless and until the defense opens the door." N.T., 5/25/22, at 22. Once Appellant conceded that he intended to raise the curio defense, the trial court permitted the Commonwealth to enter the evidence in its case-in-chief to anticipatorily rebut the defense, on the basis that Appellant's intent in possessing the item was now relevant.

We briefly set forth the curio defense as the Commonwealth contends that the footage was relevant to rebutting that defense. The prohibited offensive weapon statute states, "A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." 18 Pa.C.S. § 908(a). There is no dispute that the brass knuckles qualified as an offensive weapon. The curio defense is one of several "exceptions" to the crime.

**(b) Exceptions.--**

(1) It is a defense under this section for the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, or that, with the exception of a bomb, grenade or incendiary device, he complied with the National Firearms Act (26 U.S.C. § 5801 et seq.), or that he possessed it briefly in consequence of having found it or taken it from an aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully.

18 Pa.C.S. § 908(b).  The term "curio" is not defined, and the only decision examining its definition has cited the dictionary definition.  "Neither the statute for prohibited offensive weapon nor Black's Law Dictionary defines 'curio,' so we turn to the Merriam-Webster Dictionary, which defines 'curio' as 'something (such as a decorative object) considered novel, rare, or bizarre.'" *Commonwealth v. Battaglia*, 809 WDA 2021, unpublished memorandum at *7 (Pa. Super. filed May 20, 2022) (citation omitted).

Appellant challenges the clips "show[ing] [Appellant] threatening to fight his father and suggesting he might have to 'stomp him out' in the future." Appellant's Brief at 20.  He maintains that the trial court erred because the prohibited offensive weapon statute contains no *mens rea*.  Accordingly, Appellant posits that the only relevance of these comments and threatening behavior "is if it was improperly considered as propensity evidence." Appellant's Reply Brief at 2.  Specifically, Appellant maintains that the video clips "show [Appellant's] propensity for anger and violence…." Appellant's Brief at 17.  Citing the trial court's conclusion in its opinion that the evidence was relevant to showing his intent, Appellant argues that the "rationale for

admitting the evidence invited the jury to conclude that [Appellant]'s bad behavior on one occasion meant he was an 'angry' or violent person who would not possess the metal knuckles for an innocuous reason. This is the obvious thrust of the trial court's rationale." **Id.** at 21. Appellant cites federal authorities examining the analogous federal rule of evidence in support. "For example, the Third Circuit Court of Appeals explained, 'As we have frequently stated, in proffering such evidence, the government must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose, **no link of which is a forbidden propensity inference**.'" **Id.** at 22 (emphasis in original; quoting **United States v. Caldwell**, 760 F.3d 267, 276-77 (3d Cir. 2014) (cleaned up)).

We disagree that the evidence was relevant only for a propensity purpose. Appellant's argument focuses less on whether the trial court's rationale is sound and more on how the jury theoretically could have used the evidence. **Id.** at 21 ("At first blush, then, the court's ruling makes a certain amount of sense. On closer inspection … the reasoning collapses. This is because the only way this evidence could serve its proper purpose is if the jury used it improperly, *i.e.*, as propensity evidence."). We agree with the trial court that the evidence was relevant to Appellant's intent, which was directly in issue due to Appellant's testimony.

In support of his argument, Appellant relies on **Caldwell, supra**. "What happened in **Caldwell** is exactly what we have in this case, as [Appellant]'s angry demeanor as depicted in the video evidence is only relevant to his intent

if [it] establishes that his propensity for anger makes it unlikely that he would possess metal knuckles solely as a curio." *Id.* at 24-25. Initially, Appellant recognizes that federal decisions are not binding and are relevant only for their persuasive value. *Okeke-Henry v. Sw. Airlines, Co.*, 163 A.3d 1014, 1017 n.4 (Pa. Super. 2017) ("We recognize that decisions of the lower federal courts … may have persuasive, but not binding, authority on this Court."). In any event, we do not agree that *Caldwell* is directly on point. There, the government charged Caldwell with violating a federal statute which prohibits a convicted felon from knowingly possessing a firearm. Because Caldwell physically possessed the firearm, the *Caldwell* Court determined that knowledge of the firearm was irrelevant. "[A] defendant's knowledge is almost never a material issue when the government relies exclusively on a theory of actual possession … absent unusual circumstances (such as when a defendant claims he did not realize the object in his hand was a gun)." *Caldwell*, 760 F.3d at 279. The district court allowed the government to introduce Caldwell's two prior convictions for unlawfully possessing a firearm. The Court held that the district court erred, as those convictions had no relevance to the crimes charged beyond a propensity application.

> The prosecution sought to admit evidence that, on two prior occasions, Caldwell was convicted of unlawfully possessing firearms. The question the prosecution must answer is this: "How, exactly, do Caldwell's two prior convictions for unlawful firearm possession suggest he knowingly possessed this gun on this occasion?" Hard as we try, we see only one answer to that question: If Caldwell knowingly possessed firearms in the past, he was more likely to have knowingly possessed the firearm this

time. This is precisely the propensity-based inferential logic that Rule 404(b) forbids.

*Id.* at 282.

The specific question of prior convictions addressed in ***Caldwell*** obviously raises the core propensity concern of "this person previously did this, so therefore they must have done it here, too." ***See Commonwealth v. Hicks***, 156 A.3d 1114, 1157 (Pa. 2017) (Wecht, J., dissenting) ("It is natural and well-nigh inevitable that a juror considers a person to be a drug dealer when told that the same person has dealt drugs multiple times in the past, or that a juror will conclude that, if a person has assaulted women before, he likely will do so again."). But, here, that core concern is not present. The Commonwealth did not introduce Appellant's threats and aggressive behavior to prove that he had a propensity to act in a threatening and aggressive fashion. Indeed, under the circumstances of the case, a "propensity" for acting that way would make little sense as Appellant's behavior occurred contemporaneously with the charged offenses. The Commonwealth did not seek to show a "propensity" to act in that fashion, but rather sought to show how Appellant acted on the incident date.

Appellant's fundamental objection is thus largely directed towards general relevancy principles. He argues that, just as in ***Caldwell***, the prosecution was not required to establish anything more than possession of the brass knuckles. Thus, his violent and aggressive behavior was simply irrelevant to the case. At this juncture, we discuss the elements of the prohibited offensive weapon statute and how the curio defense operates.

First, Appellant is correct that Section 908 has been viewed as a strict liability offense and therefore the Commonwealth was not required to prove intent. *See Commonwealth v. Ponds*, 345 A.2d 253, 254 (Pa. Super. 1975).[1] In *Commonwealth v. Walton*, 380 A.2d 1278 (Pa. Super. 1977), this Court addressed that point with respect to the statutory defense raised herein. Walton was arrested and charged under Section 908 for carrying a sword cane. Walton relied on the curio defense at trial, claiming that he purchased the sword cane as an antique and was carrying it home when he was arrested. On appeal, Walton alleged that the statutory defense was unconstitutional because it placed the burden of proof on the defense. We disagreed. Addressing the actor's intent, we stated:

> The primary concern of the statute is the nature of the weapon, not the intention of its possessor. The statute requires the Commonwealth to show no broader intent than the intent to possess the sword cane, which intent [Walton] does not dispute here. A defendant who invokes the curio exception seeks to avoid conviction by adding an ingredient to the otherwise criminal conduct, instead of "subtracting" one by attempting to persuade the court that an essential fact is missing from the Commonwealth's case. Hence, the exception does not negate a material element of the offense set forth in Section 908(a), and the defendant may therefore be required to prove it.

*Id.* at 1280 (footnote omitted).

---

[1] *But see In Int. of R.A.F.,* 149 A.3d 63, 71 (Pa. Super. 2016) (assuming, without deciding, that because Section 908 has no express culpability provision that 18 Pa.C.S. § 302 supplies a default level of culpability of "intentionally, knowingly, or recklessly"). *See also Commonwealth v. Giordano*, 121 A.3d 998, 1005 (Pa. Super. 2015) (concluding that the similar crime of possessing a weapon on school property, which contains no explicit *mens rea*, is not a strict liability offense).

Judge Hoffman dissented, raising a point that ties into the trial court's ruling: if the statutory defense permits a defendant to show that he had no intent to use the weapon in an unlawful manner, this implicitly establishes a *mens rea*. Hence, the Commonwealth should bear the burden.

> Section 908(b) implies the existence of a *mens rea* requirement in the completed offense of [Section] 908(a) because it allows a defendant to exculpate himself by negativing the intent to use the weapon unlawfully. In **Commonwealth v. Adams**, … 369 A.2d 479 ([Pa. Super.] 1976), Judge Spaeth, in a Concurring Opinion which I joined, noted the probable existence of a *mens rea* requirement:
>
> > "If (the appellant) defends under [Section] 908(b) by saying that he possessed it 'solely as a curio,' is he, or is he not, saying that he possessed it without *mens rea*? If he is saying that he possessed it without *mens rea*, a rather curious situation is created: A defendant guilty under [Section] 908(a) … may exculpate himself by proving under [Section] 908(b) that he did not have *mens rea*, in other words, that he did not have what the Commonwealth was not required to prove he had." **Commonwealth v. Adams** *…* 369 A.2d at 983 (Concurring Opinion by Spaeth, J.).
>
> It, therefore, seems illogical to deny the existence of an intent requirement in [Section] 908(a) when the basis for the statutory exception in [Section] 908(b) is proof that one lacked the intent to use the weapon unlawfully.

***Id.*** at 1282 (Hoffman, J., dissenting). The majority responded to this claim.

> The fallacy in this argument is that a person might possess one of the described weapons without intending to use it for criminal or decorative or dramatic purposes. One might purchase a sword cane with the notion of using it to carve a leg of lamb; one might also impulsively purchase it for no particular reason. In either case the defense would be unavailable. The curio defense does not require the disproving of criminal intent but rather the establishing of a specific intent to use the item for a narrow purpose deemed acceptable by the legislature.

*Id.* at 1280 n.4.

The competing arguments on this point establish that raising the defense puts Appellant's intent at issue. The **Walton** majority's response to the dissent is the exact scenario we face here: Appellant claims that he specifically intended to use the brass knuckles for a narrow purpose deemed acceptable by the General Assembly, *i.e.*, as a curio. To counter this defense, we agree with the trial court that the Commonwealth was permitted to offer evidence shedding light on Appellant's intent. "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Accordingly, we recognize that intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." **Commonwealth v. Matthews**, 870 A.2d 924, 929 (Pa. Super. 2005) (cleaned up). Applying this principle, we agree that Appellant's conduct so close in time to the charged offense was relevant to his intent. The jury was asked to decide whether Appellant's testimony that he only used the brass knuckles as a paperweight was credible. Evidence that Appellant was acting in a threatening and aggressive manner towards his family members, in conjunction with the evidence indicating that the object was not in any type of display case, tended to undermine Appellant's defense. We therefore conclude that the evidence was relevant to Appellant's intent and was offered for a non-propensity purpose.

Appellant's second claim is that even if we conclude that the evidence was admissible for a non-propensity purpose, the trial court erred in balancing

the probative value versus its prejudicial effect as required.[2] "In a criminal case this evidence is admissible only if the probative value of the evidence

_____

[2] Appellant's statement of issues presented additionally claims that the court erred by not playing the entire videotape, which included other comments by Appellant. Particularly, Appellant focuses on his "explanation that his father had threatened him and had been told by police not to contact [Appellant], and that he was 'fed up with' his father and aunt's failure to care for his grandmother[.]" Appellant's Brief at 35. The trial court responded to this claim as follows:

> [Appellant] testified on his behalf and stated how his father and aunt do not do anything for his grandmother. While [Appellant] could have argued the state of mind [hearsay] exception for certain clips of the video, that argument does not cover every statement made in the video. Irrelevant parts of the video show [Appellant] discussing his work schedule and how he takes care of his kids. Moreover, there was no relevance to showing the video beyond what the jury had already seen. The charge was possession of a prohibited weapon. The fact that [Appellant] believed he was somehow justified in his anger towards his father is of no consequence to the facts at issue in the case.

Trial Court Opinion, 10/25/22, at 9. We are not entirely persuaded that Appellant's failure to cite hearsay exceptions justified excluding the tape as the rule of completeness, Pa.R.E. 106, would seem to apply here.

> It is sometimes stated that the additional material may be introduced only if it is otherwise admissible. However, as a categorical rule, that statement is unsound. In particular, the statement is sometimes inaccurate as applied to hearsay law. At least when the other passage of the writing or statement is so closely connected to the part the proponent contemplates introducing that it furnishes essential context for that part, the passage becomes admissible on a nonhearsay theory.

The effect of the introduction of part of a writing or conversation, 1 McCormick On Evid. § 56 (8th ed.) (footnotes omitted). However, Appellant did not specifically cite this Rule of Evidence nor make an argument along these lines. In any event, we agree with the trial court that the cited comments had little relevance or were cumulative of evidence presented, as Appellant's reasons
*(Footnote Continued Next Page)*

outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Appellant quotes *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997), a United States Supreme Court case addressing the federal rules of evidence and whether the prosecution must accept a defendant's offer to stipulate to a prior conviction when the conviction is an element of the offense.[3] He states:

> In *Old Chief* … the United States Supreme Court stressed two dangers created by evidence of other crimes or bad acts. Such evidence lures a factfinder into "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)."
>
> These dangers were acute in this case, as the Commonwealth essentially admitted the whole point of adducing the evidence was for the jury to "generalize" [Appellant]'s uncharged bad acts and apply them to the charged offense. There was not so much a risk that the jury might put this evidence to an unintended and prejudicial purpose as there was a certainty that the only conceivable use of the evidence was prejudicial.

Appellant's Brief at 27-28 (citation to transcript omitted).

We disagree. As we have previously noted, this is not a case involving the admission of a prior conviction. Informing the jury that a defendant has

---

for being angry with his father are distinct from the issue of whether he was angry at all. Appellant testified to his reasons for being angry with his father and the Commonwealth's witnesses did not dispute that any anger on Appellant's part may have been attributable to a dispute between Appellant and his family. *See* N.T., 5/25/22, at 133 ("[Appellant] was complaining about issues I believe between himself and his father, James Flory."). As such, we agree that any error in failing to play the entire videotape was harmless beyond a reasonable doubt.

[3] Our Supreme Court has declined to follow *Old Chief* on that specific question. *Commonwealth v. Jemison*, 98 A.3d 1254, 1261 (Pa. 2014).

been convicted of a crime is unquestionably more prejudicial than the "other acts" at issue here. As we concluded *supra*, Appellant's raising a defense entitled the Commonwealth to combat it, and the Commonwealth's need to present evidence is a factor in this analysis. ***See Commonwealth v. Tyson***, 119 A.3d 353, 362 (Pa. Super. 2015) (noting that "one factor in the 'undue prejudice' analysis [is] the Commonwealth's need" to present the prior act evidence). Thus, the Commonwealth's need weighs in favor of its admission. The combination of the Commonwealth's need to present additional evidence to counter Appellant's defense and the relatively low prejudicial effect of Appellant's comments support the trial court's conclusion that this evidence was not more prejudicial than probative. The trial court therefore did not abuse its discretion in admitting the evidence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/28/2023